**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**NATIONAL RAILROAD PASSENGER**
**CORPORATION d/b/a AMTRAK,**
**a Foreign Corporation,**

     **Plaintiff,**

**vs.**                          **CASE NO.:**  8:20-cv-1134

**STEADFAST INSURANCE COMPANY,**

     **Defendant.**

_____/

## COMPLAINT

The Plaintiff, NATIONAL RAILROAD PASSENGER CORPORATION, d/b/a AMTRAK ("Amtrak"), by and through the undersigned counsel files this action against STEADFAST INSURANCE COMPANY ("Steadfast"), and in support alleges:

## PARTIES

1.    Plaintiff, Amtrak, was at all times material hereto a corporation created pursuant to an Act of Congress, 45 U.S.C §501, *et seq.,* and more than fifty percent (50%) of the capital stock of said Plaintiff is owned by the United States.

2.    Defendant Steadfast was at all times material hereto a Delaware corporation eligible to sell insurance in the State of Florida and in Hillsborough County, Florida. **Exhibit A.**

## JURISDICTION AND VENUE

3.    Pursuant to Amtrak's status as a Congressionally created corporation with over 50 percent of the capital stock owned by the United States, this action is a civil action which this Court has original jurisdiction over pursuant to Title 28 U.S.C. §1331 and §1349.

4.     The Court has authority to grant declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

5.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)2, (c)(2), and (d).

## GENERAL ALLEGATIONS

6.     This Complaint concerns an insurance policy written by Steadfast Insurance Company, Railroad Protective Liability Policy No. SCO 0083695-00 ("the policy").  **Exhibit B,** pg. 1.  The named insured of the policy, which is the subject of this lawsuit, is South Florida Regional Transportation Authority ("SFRTA").  **Exhibit B,** pg. 1.  Section II of the Railroad Protective Liability Coverage Form states "Who is An Insured" under the policy, and lists:

> 1. You [SFRTA] are an insured. 2. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers and directors. 3. Your stockholders are insureds, but only with respect to their liability as stockholders. **4. Any railroad operating over your [SFRTA] tracks is an insured.**

**Exhibit A,** pg. 5 (emphasis added).

7.     The insurance policy referenced above was in effect on July 6, 2016.  On that day safety mechanisms at a railroad crossing were taken out of service and Tiaria Lee ("Ms. Lee") subsequently sustained personal injuries when she drove her vehicle in front of an Amtrak train operating on SFRTA tracks at the crossing in the vicinity of Windsor Ave and 25th ST, West Palm Beach, Florida.

8.     The July 6, 2016 incident resulted in significant litigation (hereinafter "*Lee* matter") and an eventual settlement and voluntary dismissal with prejudice on November 19, 2019, in the West Palm Beach Division of the United States District Court of the Southern District of Florida.  **Exhibit C.**

9.     Within weeks of Ms. Lee's accident of July 6, 2016 and specifically on August 9, 2016, Amtrak sent a letter to SFRTA (the named insured on the policy at issue in this case), through SFRTA's General Counsel, Teresa J. Moore.  **Exhibit D.**  The letter requested "any insurance policies and/or self-insured retention funds which SFRTA maintains which may provide coverage to it and its contractor, VTMI, for any claims arising from this accident." **Exhibit D.**  SFRTA did not provide Amtrak any of the requested policies.

10.    Amtrak first learned of the policy at issue's existence at a mediation in the *Lee* matter held on December 21, 2018.  Within weeks of the mediation and specifically on January 25, 2019, Amtrak tendered to Steadfast pursuant to and in accordance with the policy, demanding it defend Amtrak in the *Lee* matter and indemnify it from and against all liability arising out of or in connection with the *Lee* matter, including all settlements, judgements, damages, costs, expenses, and reasonable attorneys' fees.

11.    On February 14, 2019 Steadfast disclaimed any obligation to defend or indemnify Amtrak under the policy.  On April 12, 2019, Amtrak reasserted Steadfast's duty to defend and indemnify Amtrak, and provided significant legal support for the assertion.  On July 29, 2019, however, Steadfast again disclaimed any obligation to defend or indemnify Amtrak under the policy.  On August 30, 2019, Amtrak reasserted Steadfast's duty to defend and indemnify Amtrak and provided legal precedent in support thereof.  On October 1, 2019, Steadfast again disclaimed any obligation to defend or indemnify Amtrak under the policy.

12.    Amtrak has complied with all terms of the policy prior to filing this lawsuit.

## COUNT I – DECLARATORY JUDGMENT AS TO
## AMTRAK'S STATUS AS AN INSURED

13.    Amtrak, as a railroad operating on SFRTA tracks, is An Insured pursuant to Section II of the Railroad Protective Liability Coverage Form.  **Exhibit A,** pg. 5.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff, Amtrak, respectfully requests that the Court enter judgment in its favor declaring the following:

14.     Amtrak is An insured pursuant to the policy.

15.     Amtrak successfully tendered to Steadfast.

16.     Having already forgone their obligation to defend Amtrak the *Lee* matter, Steadfast has a duty to indemnify Amtrak from and against all liability arising out of or in connection with the *Lee* matter, including all settlements, judgments, damages, costs, expenses, and reasonable attorneys' fees up to the policy aggregate limit of $6,000,000.

17.  Amtrak is entitled to an award of its reasonable attorneys' fees, costs, and expenses incurred in this declaratory judgment litigation.

18.     Order such other relief as the Court may deem just and proper.

Dated:  May 15, 2020

*/s/ Daniel J. Fleming*
DANIEL J. FLEMING
FB #0871222
DANIEL A. HOFFMAN
FB #1000362
Johnson Pope, LLP
401 East Jackson Street, Suite 3100
Tampa, FL  33602
(813) 225-2500 / (813) 223-7118
DFleming@jpfirm.com
DHoffman@jpfirm.com
SMartin@jpfirm.com

Search

# Company Directory: Search Results

*This information is current as of 1/9/2020*

## STEADFAST INSURANCE COMPANY

| | |
|---|---|
| FEIN | 52-0981481 |
| Florida Company Code | S1212 |
| NAIC Company Code | 26387 |
| Company Type | SURPLUS LINES |
| Home State | IL |
| Web Site | http://WWW.ZURICHNA.COM |
| Authorization Type | LETTER OF ELIGIBILITY |
| Authorization Status | ACTIVE |
| First Licensed in Florida Date | 04/25/1990 |

### Addresses

| Type | Address | Phone |
|---|---|---|
| ADMINISTRATIVE | 1299 ZURICH WAY, SCHAUMBURG IL 60196-1056 United States | (847) 605-6000 |
| HOME | 1299 ZURICH WAY, SCHAUMBURG IL 60196-1056 United States | |
| MAILING | 1299 ZURICH WAY, 5TH FLOOR, SCHAUMBURG IL 60196-1056 United States | (847) 413-5048 |
| CLAIMS WEBSITE | | (800) 987-3373 |
| LOCATION OF RECORDS | 1299 ZURICH WAY, SCHAUMBURG IL 60196-1056 United States | (847) 413-5048 |

### Authorized Lines of Business

1 of 3                    Exhibit A

| Line of Business | Type |
|---|---|
| SURPLUS LINES PROPERTY & CASUALTY 626.918 (2)(B) | DIRECT AND REINSURANCE |

New Search

## DISCLAIMER

The Florida Office of Insurance Regulation ("Office") provides access to company and other information on this Web site as a public service. Although reasonable efforts have been made to ensure that all electronic information made available is current, complete and accurate, the Office does not warrant or represent that this information is current, complete and accurate. All information is subject to change on a regular basis, without notice.

The Office assumes no responsibility for any errors in the information provided, nor assumes any liability for any damages incurred as a consequence, directly or indirectly, of the use and application of any of the contents of the Office Web site. Unless otherwise noted on an individual document, file, webpage or other Web site item, the Office grants users permission to reproduce and distribute all information available on this website for non-commercial purposes and usage, as long as the contents remain unaltered and as long as it is noted that the contents have been made available by the Florida Office of Insurance Regulation.

Any electronic information or inquiries that the Office receives from a Web site user shall not be considered as, or treated as, confidential.

The inclusion of, or linking to, other web site URLs does not imply our endorsement of, nor responsibility for, those web sites, but has been done as a convenience to our Web site visitors.

## EXAMPLES

The Office of Insurance Regulation company search does not require you to know exactly how Office of Insurance Regulation has the company's name recorded. It will take your input and return every name that contains your input as it appears in any part of all records. In other words, if your search is:

*Floricorp*

then the search will return all the names that have "Floricorp" in any part of the record. For example:

FLORICORP, INC.
FLORICORP PROPERTY AND CASUALTY COMPANY
SOUTHERN FLORICORP UNLIMITED

If you entered

*Floricorp P*

2 of 3                                        Exhibit A

you would get only

FLORICORP PROPERTY AND CASUALTY COMPANY

Note that even though the whole name is searched, the service still looks for an exact match. So if you entered

*FLORICORP,*

(i.e., with a comma) you would only get

FLORICORP, INC.

# Railroad Protective Liability

**Declarations**



**ZURICH**®

**Steadfast Insurance Company**
Dover, Delaware
Administrative Offices - 1400 American Lane
Schaumburg, Illinois 60196-1056

Policy Number:   SCO 0083695-00                    Renewal of Number:   - - - - -

**Item 1.   Named Insured and Mailing Address:**        **Producer:**

SOUTH FLORIDA REGIONAL                  AON RISK SERVICES INC. OF MD
TRANSPORTATION                          500 E PRATT ST
AUTHORITY (SEE SCHEDULE OF NAMED        BALTIMORE, MD  21202-3133
INSUREDS)
800 NW 33RD ST
POMPANO BEACH, FL  33064-2046

**Item 2.   Policy Period:**        **From:** 12/12/2014  **To:**  12/12/2019
12:01 A.M. Standard time at the address of the first Named Insured shown above.
(Both days inclusive.)

**Item 3.   Designated Contractor:**     Veolia Transporation Maintenance and Infrastructure Inc

Mailing Address:           1400 W Lambert Road  Ste B  Brea, CA  92821

**Item 4.   Name and Address of Involved Governmental Authority to Other Contracting Party:**

**Item 5.   Location of Covered Operations:**     Palm Beach, broward and Miami Dade Counties Florida

**Item 6.   Limits of Insurance:**     $2,000,000  Each Occurrence        $6,000,000  Policy Aggregate

**Item 7.   Business Description:**

Form of Business:     CORPORATION

**Item 8.   Description of Operation:**     Maintenance of Way.  Track inspection and maintenance, signal inspection and
maintenance, right of way clean up, bridge maintenance

**Item 9.   Premium:**     $330,470        Fully Earned at Inception

| Classification Code No. | | Premium Basis | Rate of Adjustment |
|---|---|---|---|
| 40012 | Railroad  Protective  Liab  -(RR  is named insd) -Construction Ops (RR) -Ops for Interests Other than RR | | FLAT |

Total Advance Premium     $330,470

**Item 10.  Forms and Endorsements:**     See Attached Schedule of Forms and Endorsements

Signed by: *Cheryl A. Wilson*                                                          12/11/2014

Authorized Representative                                                             Date

# Schedule Of Forms And Endorsements


ZURICH®

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| SCO 0083695-00 | 12/12/2014 | 12/12/2019 | 12/12/2014 | 18300000 | ---------- | ---------- |

**Named Insured and Mailing Address:**
SOUTH FLORIDA REGIONAL TRANSPORTATION
AUTHORITY (SEE SCHEDULE OF NAMED
INSUREDS)
800 NW 33RD ST
POMPANO BEACH, FL  33064-2046

**Producer:**
AON RISK SERVICES INC. OF MD
500 E PRATT ST
BALTIMORE, MD  21202-3133

This endorsement modifies insurance provided by the following:

| Form Number | Endorsement Number | Form Name |
|---|---|---|
| U-GU-692-C CW (06/13) | | Disclosure of Premium (Relating to Disposition of TRIA) |
| STF-RRP-D-106-B CW (10/08) | | Railroad Protective Liability Policy |
| STF-RRP-106-A CW (10/08) | | Railroad Protective Liability Coverage Form |
| STF-RRP-124-B CW (10/08) | 01 | Employment Practices Liability - Exclusion |
| STF-RRP-125-B CW (10/08) | 02 | Pollution Exclusion Amendment |
| STF-RRP-157-B CW (10/08) | 03 | Schedule of Named Insured |
| STF-RRP-223-A CW (10/08) | 04 | Asbestos Exclusion Endorsement |
| STF-GU-199-B (01/09) | | Important Notice - Service of Suit and In Witness Clause |
| STF-GU-643-A CW (09/08) | 05 | Nuclear Energy Liability Exclusion Endorsement (Broad Form) |

Signed by: *Cheryl A. Wilson*                                        12/11/2014
　　　　　　Authorized Representative                          Date

STF-GU-647-A CW (10/09)
Page 1  of 1

# Railroad Protective Liability Coverage Form



Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy, the words "you" and "your" refer to the Named Insured shown in the Declarations.  The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning.  Refer to DEFINITIONS (SECTION V).

## SECTION I - COVERAGES

## COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend any "suit" seeking those damages.  We may at our discretion investigate any occurrence and settle any claim or "suit" that may result.  But:

   **(1)** The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (Section III); and

   **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGE A.

   **b.** This insurance applies to "bodily injury" and "property damage" only if:

   **(1)** The "bodily injury" or "property damage" occurs during the policy period; and

   **(2)** The "bodily injury" or "property damage" arises out of acts or omissions at the "job location", which are related to or are in connection with the "work" described in the Declarations.

   **c.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions**

   This insurance does not apply to:

   **a. Expected or Intended Injury**

   "Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

   **b. Contractual Liability**

   "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages assumed in a contract or agreement that is a "covered contract".

   **c. Completed Work**

   "Bodily injury" or "property damage" occurring after the "work" is completed.  The "work" will be deemed completed at the earliest of the following times:

   **(1)** When all the "work" called for in the "contractor's contract has been completed.

STF-RRP-106-A CW (10/08)
Page 1 of 7

**(2)** When all the "work" to be done at the "job location" has been completed.

**(3)** When that part of the "work" done at the "job location" has been put to its intended use by you, the governmental authority or *other contracting party.

This exclusion does not apply to "bodily injury" or "property damage" resulting from the existence of or removal of tools, uninstalled equipment or abandoned or unused materials.

#### d. Acts or Omissions of Insured

"Bodily injury" or "property damage", the sole proximate cause of which is an act or omission of any insured other than acts or omissions of any of "your designated employees".  This exclusion does not apply to injury or damage sustained at the "job location" by any of "your designated employees" or employee of the "contractor", or by any employee of the governmental authority or any other contracting party (other than you) specified in the Declarations.

#### e. Workers Compensation and Similar Laws

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.  This exclusion does not apply to any obligation of the insured under the Federal Employers Liability Act, as amended.

#### f. Pollution

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at or from the "job location".

**(1)** Due to the past or present use of the "job location" by you or for you or others for the handling, storage, disposal, processing or treatment of waste; or

**(2)** Due to the dumping or disposal of waste on the "job location" by the "contractor" with the knowledge of you or any of "your designated employees"; or

**(3)** On which you or "contractors" working directly or indirectly on any insured's behalf are performing operations.

    **(a)** If the pollutants are brought on or to the "job location" in connection with such operations by such insured, contractors or subcontractor; or

    **(b)** If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph (3) (a) does not apply to "bodily injury" or "property damage" arising out of heat, smoke, or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

#### g. Damage to Owned, Leased or Entrusted Property

"Property damage" to property owned by you or leased or entrusted to you under a lease or trust agreement.

### COVERAGE B - PHYSICAL DAMAGE TO PROPERTY

#### 1. Insuring Agreement

We will pay for "physical damage to property" to which this insurance applies.  The "physical damage to property" must occur during the policy period.  The "physical damage to property" must arise out of acts or omissions at the "job location" which are related to or in connection with the "work" described in the Declarations.  The property must be owned by or leased or entrusted to you under a lease or trust agreement.

#### 2. Exclusions

This insurance does not apply to "physical damage to property":

#### a. Completed Work

Occurring after the "work" is completed.  The "work" will be deemed completed at the earliest of the following times:

**(1)**  When all the "work" called for in the "contractor's contract has been completed.

**(2)**  When all the "work" to be done at the "job location" has been completed.

**(3)**  When the part of the "work" done at the "job location" has been put to its intended use by you, the governmental authority or other contracting party.

This exclusion does not apply to  "physical damage to property" resulting from the existence of tools, uninstalled equipment or abandoned or unused materials.

**b.  Acts or Omissions of Insured**

The sole proximate cause of which is an act or omission of any insured other than acts or omissions of any of "your designated employees".

**c.  Nuclear Incidents or Conditions**

Due to nuclear reaction, nuclear radiation or radioactive contamination or to any related act or condition.

**d.  Pollution**

Due to the discharge, dispersal, seepage, migration, release or escape of pollutants excluded under exclusion **f.,** Coverage A.

## SUPPLEMENTARY PAYMENTS - COVERAGE A

We will pay, with respect to any claim or "suit" we defend:

**1.**  All expenses we incur.

**2.**  All costs taxed against the insured in the "suit".

**3.**  All interests on the full amount of any judgment accrues after entry of the judgment and before we have paid, offered to pay or deposited in court the part of the judgment that is within the applicable limit of insurance.

**4.**  The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance.  We do not have to furnish these bonds.

**5.**  Expenses incurred by the insured for first aid to others at the time of an accident, for "bodily injury" to which this insurance applies.

**6.**  All reasonable expenses, incurred by the insured at our request to assist us in the investigation or defense of claim or "suit" including actual loss of earnings up to $100 a day because of time off from work.

**7.**  Prejudgment interest awarded against the insured on that part of the judgment we pay.  If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

These payments will not reduce the limits of insurance.

## SECTION II - WHO IS AN INSURED

**1.**  You are an insured.

**2.**  Your "executive officers" and directors are insureds, but only with respect to their duties as your officers and directors.

**3.**  Your stockholders are insureds, but only with respect to their liability as stockholders.

**4.**  Any railroad operating over your tracks is an insured.

## SECTION III - LIMITS OF INSURANCE

**1.**  The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

**a.**  Insureds;

**b.**  Claims made or "suits" brought; or

**c.**  Persons or organization making claims or bringing "suits".

**2.** The Aggregate Limit is the most we will pay for the sum of all damages because of all "bodily injury", all "property damage" and all "physical damage to property".

**3.** Subject to 2. above, the Each Occurrence Limit is the most we will pay for the sum of all damages because of all "bodily injury", all "property damage" and all "physical damage to property" arising out of any one occurrence.

**4.** Subject to 3. above, the payment for "physical damage to property" shall not exceed the lesser of:

    **a.** the actual cash value of the property at the time of loss; or

    **b.** the cost to repair or replace the property with other property of like kind or quality.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - CONDITIONS

**A.** The following Conditions apply to Coverages A and B:

    **1. Assignment**

        Assignment of interest under this Coverage Part shall not bind us unless we issue an endorsement consenting to the assignment.

    **2. Bankruptcy**

        Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

    **3. Cancellation**

        **a.** You may cancel this policy by mailing or delivering to us advance written notice of cancellation.

        **b.** We may cancel this policy by mailing or delivering to you, the "contractor" and any involved governmental authority or other contracting party designated in the Declarations, at the respective mailing addresses last known to us, written notice of cancellation at least 60 days before the effective date of cancellation.

        **c.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

        **d.** If this policy is cancelled, any unearned premium will be refunded. If we cancel, the refund will be pro rata. If you cancel, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

        **e.** If notice is mailed, proof of mailing will be sufficient proof of notice.

    **4. Changes**

        This policy contains all the agreements between you and us concerning the insurance afforded. You are authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

    **5. Inspections And Surveys**

        We have the right but are not obligated to:

        **a.** Make inspections and surveys at any time;

        **b.** Give you reports on the conditions we find; and

        **c.** Recommend changes.

        Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

        **a.** Are safe or healthful; or

        **b.** Comply with laws, regulations, codes or standards.

Exhibit B

STF-RRP-106-A CW (10/08)
Page 4 of 7

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

### 6. Other Insurance

The insurance afforded by this policy is:

**a.** Primary insurance and we will not seek contribution from any other insurance available to you except if the other insurance is provided by a contractor other than the designated contractor for the same operation and "job location"; and

**b.** If the other insurance is available, we will share with that other insurance by the method described below.

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

### 7. Premium And Premium Audit

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Contract cost, the premium base shown in the Declarations, means the total cost of the operations described in the Declarations.

c. The premium shown in the Declarations as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the contractor designated in the Declarations. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the contractor designated in the Declarations.

In no event shall the payment of premium be your obligation.

### 8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

### 9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.** The following Conditions apply to Coverage A only:

### 1. Legal Action Against Us

No person or organization has a right under this policy:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

### 2. Duties In The Event Of Occurrence, Claim Or Suit

**a.** You must see to it that we are notified as soon as practicable of an occurrence which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the occurrence took place;

**(2)** The names and addresses of any injured persons witnesses; and

**(3)** The nature and location of any injury or damage arising out of the occurrence.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation settlement or defense of the claim or "suit"; and

**(4)** Assist us, upon our request, in this endorsement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for the first aid, without our consent.

**3. Separation of Insureds**

Except with respect to the Limits of Insurance this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

**C.** The following Conditions apply to Coverage B only:

**1. Appraisal**

If you fail to agree with us on the value of the property, or the amount of loss, either you or we may make written demand for an appraisal of the loss within sixty (60) days after proof of loss is filed. In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the value of the property and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we still retain our right to deny the claim.

**2. No Benefit To Bailee**

No person or organization, other than you, having custody of the property will benefit from this insurance.

**3. Insured's Duties In The Event Of A Loss**

You must:

**a.** Protect the property, whether or not the loss is covered by this policy. Any further loss due to your failure to protect the property shall not be recoverable under this policy. Reasonable expenses incurred in affording such protection shall be deemed to be incurred at our request; and

**b.** Submit to us, as soon after the loss as possible, your sworn proof of loss constraining the information we request to settle the loss and, at our request, make available the damaged property for examination.

**4. Legal Action Against Us**

No person or organization has a right under this policy to sue us on this policy unless all of its terms have been fully complied with and until 30 days after proof of loss is filed and the amount of loss is determined as provided in this policy.

### 5. Payment Of Loss

We may pay for the loss in money, but there can be no abandonment of any property to us.

## SECTION V - DEFINITIONS

1. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

2. "Contractor" means the contractor designated in the Declarations and includes all subcontractors working directly or indirectly for that "contractor" but does not include you.

3. "Covered contract" means any contract or agreement to carry a person or property for a charge or any interchange contract or agreement respecting motive power, or rolling stock equipment.

4. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

5. "Job location" means the job location designated in the Declarations including any area directly related to the "work" designated in the Declarations. "Job location" includes the ways next to it.

6. "Physical damage to property" means direct and accidental loss of or damage to rolling stock and their contents, mechanical construction equipment or motive power equipment, railroad tracks, roadbeds, catenaries, signals, bridges or buildings.

7. "Property damage" means:

   a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

8. "Suit" means a civil proceeding in which damages because of "bodily injury" or "property damage" to which this insurance applies are alleged. "Suit" includes:

   a. An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

   b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

9. "Work" means work or operations performed by the "contractor" including materials, parts or equipment furnished in connection with the work or operations.

10. "Your designated employee" means:

    a. Any supervisory employee of yours at the "job location";

    b. Any employee of yours while operating, attached to or engaged in work trains or other railroad equipment at the "job location" which are assigned exclusively to the "contractor"; or

    c. Any employee of yours not described in a. or b. above who is specifically loaned or assigned to the work of the "contractor" for the prevention of accidents or protection of property.

**Endorsement #** 01

# Employment Practices Liability - Exclusion



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| SCO 0083695-00 | 12/12/2014 | 12/12/2019 | 12/12/2014 | 18300000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

SOUTH FLORIDA REGIONAL TRANSPORTATION
AUTHORITY (SEE SCHEDULE OF NAMED
INSUREDS)
800 NW 33RD ST
POMPANO BEACH, FL  33064-2046

**Producer:**

AON RISK SERVICES INC. OF MD
500 E PRATT ST
BALTIMORE, MD  21202-3133

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

In consideration of the premiums charged, it is agreed that this policy does not apply to any Liability arising out of Employment Practices Liability as stated below:

1. Refusal to employ

2. Termination of Employment

3. Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment related practices, policies, acts, or omissions; or

This exclusion applies whether or not the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

All other terms and conditions remain unchanged.

Signed by: *Cheryl A. Wilson*
_____
Authorized Representative

12/11/2014
_____
Date

Exhibit B

STF-RRP-124-B CW (10/08)
Page 1 of 1

**Endorsement #** 02

# Pollution Exclusion Amendment



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| SCO 0083695-00 | 12/12/2014 | 12/12/2019 | 12/12/2014 | 18300000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

SOUTH FLORIDA REGIONAL TRANSPORTATION
AUTHORITY (SEE SCHEDULE OF NAMED
INSUREDS)
800 NW 33RD ST
POMPANO BEACH, FL  33064-2046

**Producer:**

AON RISK SERVICES INC. OF MD
500 E PRATT ST
BALTIMORE, MD  21202-3133

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

In consideration of the premium charged, it is agreed that paragraph **(a)** of exclusion **f.(3)** of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (SECTION **I** - Coverages) is replaced as follows:

This insurance does not apply to:

**f.**  "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at or from the "job location":

    **(3)** On which you or "contractors" working directly or indirectly on any insured's behalf are performing operations:

        **(a)** If the pollutants, other than fuels or lubricants for equipment used at the "job location", are brought on or to the "job location" in connection with such operations by you, the "contractor" or "your designated employee".

All other terms and conditions remain unchanged.

Signed by: *Cheryl A. Wilson*
    Authorized Representative

Date: 12/11/2014

STF-RRP-125-B CW (10/08)
Page 1 of 1

12 of 20                    Exhibit B

**Endorsement #** 03

# Schedule of Named Insureds



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| SCO 0083695-00 | 12/12/2014 | 12/12/2019 | 12/12/2014 | 18300000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

SOUTH FLORIDA REGIONAL TRANSPORTATION
AUTHORITY (SEE SCHEDULE OF NAMED
INSUREDS)
800 NW 33RD ST
POMPANO BEACH, FL 33064-2046

**Producer:**

AON RISK SERVICES INC. OF MD
500 E PRATT ST
BALTIMORE, MD 21202-3133

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

It is understood and agreed that Item 1. of the Declarations Page, **Named Insured**, is completed as follows:

SOUTH FLORIDA REGIONAL TRANSPORTATION
AUTHORITY (SEE SCHEDULE OF NAMED INSUREDS)

South Florida Regional Transportation   CSX Transportation Inc  Florida Department of  Transportation

All other terms and conditions remain unchanged.

Signed by: *Cheryl A. Wilson*                                    12/11/2014
　　　　　　Authorized Representative                          Date

**Endorsement #** 04

# Asbestos Exclusion Endorsement



| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| SCO 0083695-00 | 12/12/2014 | 12/12/2019 | 12/12/2014 | 18300000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

SOUTH FLORIDA REGIONAL TRANSPORTATION
AUTHORITY (SEE SCHEDULE OF NAMED
INSUREDS)
800 NW 33RD ST
POMPANO BEACH, FL  33064-2046

**Producer:**

AON RISK SERVICES INC. OF MD
500 E PRATT ST
BALTIMORE, MD  21202-3133

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

The following exclusion is added to paragraph **2. Exclusions** of **Section I - Coverage A – Bodily Injury And Property Damage Liability** and **Coverage B - Physical Damage to Property:**

**2.  Exclusions**

This insurance does not apply to:

**Asbestos**

**A.**  "Bodily injury", "property damage" or "personal and advertising injury" arising out of or which would not have occurred, in whole or in part, but for the actual, alleged or threatened discharge, dispersal, release, leakage, leaching, friability, flaking, escape or presence of asbestos, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to the injury or damage; or

**B.**  Any sums that any insured or other entity must pay, repay or reimburse because of any:

1.  Request, demand, order, statutory or regulatory requirement, direction or determination  that any insured or others  test for, investigate, monitor, clean up, remove, study, contain, treat, encapsulate, control or take any other action regarding asbestos; or

2.  Claim  or "suit"  for damages arising out of or relating in any way to any request, demand, order, statutory or regulatory requirement, direction or determination  that any insured or  others  test for, investigate, monitor, clean up, remove, study, contain, treat, encapsulate, control or take any other action regarding asbestos; or

**C.**  Any other loss, cost or expense arising out of or relating in any way to asbestos.

All other terms and conditions remain unchanged.

Signed by: *Cheryl A. Wilson*                                    12/11/2014
Authorized Representative                                        Date



# Important Notice

**Service of Suit and In Witness Clause**

## Service of Suit

In the event an action or proceeding arises under the contract, it is agreed that the Company, at your request, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver or limitation of the right to arbitration as set forth herein or to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or any state in the United States. It is further agreed that service of process in such suit may be made upon Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL 62703. In any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefore, the Company hereby designates the Superintendent, Commissioner or Director of Insurance, other officer specified for that purpose in the statute, or his successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured of any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named Illinois Corporation Service Company as the entity to whom the said officer is authorized to mail such process or a true copy thereof.

## In Witness Clause

In return for the payment of premium, and subject to the terms of this policy, coverage is provided as stated in this policy.

IN WITNESS WHEREOF, this Company has executed and attested these presents and, where required by law, has caused this policy to be countersigned by its duly Authorized Representative(s).


_Nancy D. Mueller_

President


_D---JKamy_

Corporate Secretary


**QUESTIONS ABOUT YOUR INSURANCE?** Your agent or broker is best equipped to provide information about your insurance. Should you require additional information or assistance in resolving a complaint, call or write to the following (please have your policy or claim number ready):

Zurich in North America
Customer Inquiry Center
1400 American Lane
Schaumburg, Illinois  60196-1056
**1-800-382-2150** (Business Hours:  8am - 4pm [CT])
**Email:**  info.source@zurichna.com

Endorsement #  05

# Nuclear Energy Liability Exclusion Endorsement



**(Broad Form)**

| Policy No. | Eff. Date of Pol. | Exp. Date of Pol. | Eff. Date of End. | Producer | Add'l Prem. | Return Prem. |
|---|---|---|---|---|---|---|
| SCO 0083695-00 | 12/12/2014 | 12/12/2019 | 12/12/2014 | 18300000 | ---------- | ---------- |

**Named Insured and Mailing Address:**

SOUTH FLORIDA REGIONAL TRANSPORTATION
AUTHORITY (SEE SCHEDULE OF NAMED
INSUREDS)
800 NW 33RD ST
POMPANO BEACH, FL  33064-2046

**Producer:**

AON RISK SERVICES INC. OF MD
500 E PRATT ST
BALTIMORE, MD  21202-3133

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

**1.**  The insurance does not apply:

**A**.  Under any Liability Coverage, to "bodily injury" or "property damage":

**(1)**  With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

**(2)**  Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

**B.**  Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

**C.**  Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

**(1)**  The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

**(2)**  The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

STF-GU-643-A CW (09/08)
Page 1 of 2

(3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

All other terms and conditions of the policy shall apply and remain unchanged.

Signed by: _Cheryl A. Wilson_                    12/11/2014
        Authorized Representative            Date

# Disclosure Statement



**NOTICE OF DISCLOSURE FOR AGENT & BROKER COMPENSATION**

If you want to learn more about the compensation Zurich pays agents and brokers visit:

http://www.zurichnaproducercompensation.com

or call the following toll-free number:  (866) 903-1192.

This Notice is provided on behalf of Zurich American Insurance Company

and its underwriting subsidiaries.



# Advisory notice to policyholders regarding the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") regulations

No coverage is provided by this policyholder notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your declarations page for complete information on the coverages you are provided.

This notice provides information concerning possible impact on your insurance coverage due to directives issued by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

**Please read this Notice carefully.**

OFAC administers and enforces sanctions policy based on Presidential declarations of "national emergency". OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons." This list can be located on the United States Treasury's web site – http://www.treasury.gov/about/organizational-structure/offices/Pages/Office-of-Foreign-Assets-Control.aspx.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC restrictions. When an insurance policy is considered to be such a blocked or frozen contract, no payments or premium refunds may be made without authorization from OFAC. Other limitations on premiums and payments also apply.

Exhibit B
Includes copyrighted material of Insurance Services Office, Inc., with its permission.
U-GU-1041-A  (03/11)
Page 1 of 1



**THIS ENDORSEMENT IS ATTACHED TO AND MADE PART OF YOUR POLICY.**

**THIS ENDORSEMENT DOES NOT GRANT ANY COVERAGE OR CHANGE THE TERMS AND CONDITIONS OF ANY COVERAGE UNDER THE POLICY.**

# DISCLOSURE OF PREMIUM
# (RELATING TO DISPOSITION OF TRIA)

### SCHEDULE*

---

**(1)** Premium attributable to risk of loss from certified acts of terrorism through the end of the policy period based on the extension of the Terrorism Risk Insurance Act of 2002, as amended by the Terrorism Risk Insurance Extension Act of 2005, ("TRIA") for lines subject to TRIA and the Terrorism Risk Insurance Program Reauthorization Act of 2007 (TRIPRA):

**$15,737**

If TRIA terminates, the portion of this premium attributable to the remaining part of the policy period, as modified by any change shown in **(2)** of this Schedule, applies to the risk of loss from terrorism after the termination of TRIA.

---

**(2)** Premium change upon termination of TRIA or upon applicability of a Conditional Endorsement:

No change unless one of the following is completed -

Return Premium:     **N/A**

Additional Premium: **N/A**

If we notify you of an additional premium charge, the additional premium will be due as specified in such notice.

---

*Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Disclosure of Premium**

In accordance with the TRIA, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to the risk of loss from terrorist acts certified under that Act for lines subject to TRIA. That portion of your premium attributable is shown in the Schedule of this endorsement or in the Declarations.

**B. Disclosure of Federal Participation in Payment of Terrorism Losses**

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention. The Act currently provides for no insurance industry or United States government participation in terrorism losses that exceed $100 billion in any one calendar year.  The federal program established by the Act is scheduled to terminate at the end of

December 31, 2014 unless extended by the federal government.

**C. Possibility of Additional or Return Premium**

The premium attributable to the risk of loss from certified acts of terrorism coverage is calculated based on the coverage (if any) in effect at the beginning of your policy for certified acts of terrorism.  If your policy contains a Conditional Endorsement, the termination of TRIA or extension of the federal program with certain modifications (as explained in that endorsement) may modify the extent of coverage (if any) your policy provides for terrorism. If TRIA terminates or the Conditional Endorsement becomes applicable to your policy, the return premium (if any) or additional premium (if any) shown in (2) of the Schedule will apply. If the level or terms of federal participation change, the premium shown in (1) of the Schedule attributable to that part of the policy period extending beyond such a change may not be appropriate and we will notify you of any changes in your premium.

Includes copyrighted material of ISO Properties, Inc. with its permission.
Copyright Zurich American Insurance Company 2013

Exhibit B

U-GU-692-C CW  (06/13)
Page 1 of 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-81745-Civ-Brannon

TAIRIA LEE, et al.,

      Plaintiffs,

v.

ALBERTO PEREZ, et al.,

      Defendants.

_____/

## ORDER CLOSING CASE PURSUANT TO JOINT STIPULATION OF VOLUNTARY DISMISSAL WITH PREJUDICE

**THIS CAUSE** is before the Court upon the parties' Joint Stipulation for Dismissal with Prejudice ("Stipulation") [DE 298], according to which the parties jointly agree to the dismissal of this case with prejudice, with each party to bear its own attorneys' fees and costs. The parties have conditioned their dismissal upon the Court retaining jurisdiction to enforce the terms of their Settlement Agreement. *See Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272 (11th Cir. 2012). The Stipulation is signed by counsel for each party in accordance with Federal Rule of Civil Procedure 41(a)(1)(A)(ii). Being fully advised, the Court

      **ORDERS AND ADJUDGES** that the Stipulation [DE 298] is **APPROVED**. This case is **DISMISSED WITH PREJUDICE**, with each party to bear its own costs. The Clerk shall **CLOSE** this case.

      **DONE AND ORDERED** in Chambers at West Palm Beach in the Southern

Exhibit C

District of Florida, this 19th day of November, 2019.

_____

DAVE LEE BRANNON

U.S. MAGISTRATE JUDGE

Exhibit C

# MELKUS, FLEMING & GUTIERREZ, P.L.

### ATTORNEYS AT LAW

Daniel J. Fleming†
Jose A. Gutierrez
A.J. Melkus*
Philip C. Mokris

800 W. De Leon Street
Tampa, Florida 33606

Tel: (813) 623-2747
Fax: (813) 620-4669
E-Mail: firm@mfglaw.com
Website: www.mfglaw.com

---

† *Board Certified Civil
Trial Lawyer*

* *of counsel*

August 9, 2016

Teresa J. Moore, Esq.
General Counsel
South Florida Regional Transportation Authority
Administrative Offices
800 N.W. 33rd Street
Pompano Beach, Florida 33064

Re: 07/06/2016 Grade crossing accident
25th St. Crossing, MP SX 968.30 West Palm Beach Florida

Dear Ms. Moore:

Please be advised that this firm has been retained to represent the National Railroad Passenger Corporation (Amtrak) with respect to the above referenced accident. As part of our investigation into the cause of this accident we request that the following documentary materials be preserved by the South Florida Regional Transportation Authority (SFRTA) and its contractor Veolia Transportation Maintenance and Infrastructure Inc.(VTMI) as part of the maintenance of way services provided over the South Florida Rail Corridor. Specifically, the following materials should be preserved for the 25th Street crossing:

1. The highway-rail grade crossing warning system failure report, FRA FORM#6180-83 for the day of the accident.
2. The warning signals' crossing data recorder download for 48 hours prior to and up to the time of the accident.
3. Any and all reports prepared by signals managers and/or other authorized representatives concerning the operation of the warning signals at the time of the accident.
4. Trouble calls pertaining to the operation of the warning signals for a one-year period of time up to the date of accident.
5. Inspection and test records of the warning signals as required by 49 CFR Sections 234.249-234.271 for a one-year period of time up to the day of the accident.
6. The warning signals' schematics/ field plans as they existed on the day of the accident.

Exhibit D

7. Any physical evidence inside the signal box immediately before, during or after the time of the accident including, but not limited to, jumpers, jumper wires, jumper keepers/tag outs etc.

8. The applicable Signal Rules & Instructions in effect at the time of the accident for SFRTA and/or VTMI signal maintainers on the South Florida Corridor.

Once you have confirmed that these materials have been preserved, I would like to schedule a mutually convenient time in which to review them. Pursuant to Section 5.6 of the May 1, 1997 operating agreement between Amtrak and the Florida Department of Transportation, FDOT is required to make such documents available for Amtrak's review at the place in which such records are ordinarily kept. As SFRTA now runs FDOT's operations over the corridor I assume I can coordinate this meeting with you or your representatives. If instead I need to schedule this matter with FDOT representatives, kindly direct me to the appropriate point of contact.

Lastly, please identify any insurance policies and/or self-insured retention funds which SFRTA maintains which may provide coverage to it and its contractor, VTMI, for any claims arising from the accident.

Thank you for your anticipated cooperation.

Sincerely,

Jose A. Gutierrez

JAG/sm