**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

NATIONAL RAILROAD PASSENGER
CORPORATION d/b/a/ AMTRAK, a
Foreign Corporation

      Plaintiff,

vs.

STEADFAST INSURANCE COMPANY,

Defendant

**CASE NO.:** 8:20-cv-1134

## DEFENDANT STEADFAST INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT

Defendant, STEADFAST INSURANCE COMPANY ("Steadfast"), pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 3.01(a), moves for summary judgment on the grounds that there exists no genuine issue as to any material fact, and it is entitled to summary judgment as a matter of law. The basis for this motion is set forth in the following memorandum of law.

## PRELIMINARY STATEMENT

In this insurance coverage action, Plaintiff National Railroad Passenger Corporation d/b/a Amtrak ("Amtrak") seeks coverage for an underlying complaint (the "Underlying Action") under a railroad protective liability insurance policy (the "Steadfast Policy") issued by Steadfast to South Florida Regional Transportation Authority ("SFRTA"). The Underlying Action was filed against Amtrak, among other defendants, on September 16, 2016. However, Amtrak did not tender the Underlying Action to Steadfast until January 25, 2019, over two years and four months later. As a condition precedent to coverage, the Steadfast Policy requires that notice of any claim be provided to Steadfast as soon as practicable.  Amtrak's delay is a textbook case of late notice for which coverage is precluded under the Steadfast Policy.

Under Florida law, an insured's failure to provide timely notice of loss in contravention of a policy provision is a legal basis for the denial of recovery under a policy. In determining whether an insured's untimely reporting of loss results in

the denial of coverage, Florida courts consider (1) whether the insured provided timely notice and (2) whether the insurer was prejudiced by the late notice. Regarding the first factor, Florida courts have routinely held that delays shorter than two years and four months constituted late notice as a matter of law, thereby precluding coverage. Regarding the second factor, an insurer is automatically presumed prejudiced by late notice under Florida law, and the burden of showing absence of prejudice is on the insured. Amtrak is unable to meet this burden, particularly in light of the fact that the Underlying Action had proceeded nearly to completion by the time notice was provided, depriving Steadfast of the opportunity to defend its interests.

Amtrak does not seriously contest these points, but rather argues that its late notice should be excused because it did not learn that the Steadfast Policy existed until shortly before notice was provided. Amtrak's failure to identify the Steadfast Policy, however, was due entirely to Amtrak's own negligence and lack of due diligence. Amtrak's sole effort to locate the Steadfast Policy was a single correspondence sent to SFRTA, requesting, among other information, copies of any insurance policies which may provide coverage for the Underlying Action. Amtrak did not receive a response to its letter. Rather than sending a second correspondence or following up with SFRTA in any way, Amtrak took SFRTA's silence to mean that the requested insurance policies did not exist. This is a

patently unreasonable interpretation, particularly in light of the fact that Amtrak was aware that SFRTA was contractually obligated to carry railroad protective insurance for the very accident at the heart of the Underlying Action. An insured has an obligation to exercise due diligence in locating an insurance policy in order to provide timely notice, even if it is not immediately aware such a policy exists. Courts interpreting due diligence in the context of late notice have required more than a single correspondence. Amtrak cannot fail to provide timely notice, leave Steadfast unable to defend its interests in the Underlying Action, then attempt to argue that its conduct should be excused due to its own lack of due diligence.

Accordingly, Amtrak is not entitled to coverage on account of late notice.

## STATEMENT OF MATERIAL FACTS

### A. Background

1.      This insurance coverage action arises out of a personal injury action resulting from a collision between a train and a motor vehicle at a railroad crossing in West Palm Beach, Florida (the "Underlying Action") (Exhibit A- Complaint in Underlying Action).

2.      Steadfast insured South Florida Regional Transportation Authority ("SFRTA") is a Florida state agency, which acted as the regional transportation authority over the railroad where the accident occurred. (*Id.* at ¶ 13).

3.      National Railroad Passenger Corporation d/b/a Amtrak ("Amtrak") acted as the passenger service agent on the railroad, operating the locomotives. (*Id.* at ¶ 16).

4.      Veolia Transportation Maintenance and Infrastructure, Inc. ("VTMI") is a railroad transport services provider, responsible for operating and maintaining railroad tracks. (*Id.* at ¶¶ 13-14).

5.      The Florida Department of Transportation ("FDOT") owned the rail corridor where the accident took place. (Exhibit B-Maintenance of Way Agreement, at 44).

6.      At the time of the accident, SFRTA and FDOT entered into a maintenance of way agreement ("the Agreement") with VTMI to provide railroad infrastructure and maintenance services on the railroad. (*Id.*).

7.      On July 6, 2016, VTMI agent Alberto Perez was performing relay testing pursuant to the Agreement, during which he deactivated the signals and gate arms at one of the railroad's automobile crossings. (Exhibit A at ¶ 15).

8.      Mr. Perez allegedly failed to notify the train operators that the signals were deactivated. (*Id.* at ¶ 24).

9.      Due to the deactivation of the crossing signals, motor vehicles were not warned of oncoming trains before crossing the tracks. (*Id.* at ¶ 29).

10.     Amtrak employees Russell Griffin and James Knox were operating a locomotive that was approaching a crossing. (*Id*. at ¶¶ 19-20).

11.     The locomotive was unable to stop, and struck a vehicle operated by 24-year old Tairia Lee as it was driving over the crossing, causing Ms. Lee to be severely injured. (*Id*. at ¶¶ 17, 25).

12.     On September 16, 2016, Ms. Lee and LaShawne Josaphat as her guardian filed the Underlying Action against Mr. Perez, Mr. Griffin, Mr. Knox, VTMI, and Amtrak in Palm Beach County, Florida Civil Division, captioned *Lee and Josephat v. Perez, et al.* (*Id.*).

13.     On October 17, 2016, the Underlying Action was removed to the United States District Court for the Southern District of Florida, West Palm Beach Division, under docket no. 9:16-cv-81745, where SFRTA was added as a defendant. (Exhibit C-Docket in Underlying Action, at Docket No. 1).

14.     The Underlying Action settled in November 2019. (*Id.* at Docket No. 299).

**B.  The Agreement**

15.     On August 19, 2014, SFRTA and VTMI entered into the Agreement, under which VTMI was to provide maintenance services on the SFRTA railroad. (Exhibit B).

16.     Section 2.9.13 of the Agreement explicitly requires the procurement of a railroad protective insurance policy as follows:

> [VTMI shall procure] Railroad Protective Insurance with a limit of not less than Two Million Dollars ($2,000,000) per occurrence/Six Million Dollars ($6,000,000) aggregate applying to Bodily Injury Liability, Property Damage Liability, or Physical Damage to property or a combination of all three. The aggregate limit shall apply separately to each job, contract, agreement, project or work order. SFRTA, FDOT, and CSX Transportation, Inc., are to be included as "Named Insureds."

(*Id.* at 22-23).

17.     Section 2.9.3 of the Agreement requires VTMI to furnish certificates of insurance for the policies it procures. (*Id.* at 20).

## C. **The Steadfast Policy**

18.     In satisfaction of the Agreement, SFRTA procured from Steadfast policy no. SCO 0083695-00 for the policy period December 12, 2014 to December 12, 2019 (the "Steadfast Policy") (Exhibit D-Steadfast Policy, at 6).

19.     The Steadfast Policy contains the following insuring agreement:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any occurrence and settle any claim or "suit" that may result.

(*Id.* at 9).

20.     The Steadfast Policy also contains the following named insured provisions:

**SECTION II-WHO IS AN INSURED**

1.  You are an insured.
2.  Your "executive officers" and directors are insureds, but only with respect to their duties as your officers and directors.
3.  Your stockholders are insureds, but only with respect to their liability as stockholders.
4.  Any railroad operating over your tracks is an insured.

(*Id.* at 11).

21.     The Steadfast Policy includes the following notice provision:

**2.  Duties in the Event of Occurrence, Claim or Suit**

a.  You must see to it that we are notified as soon as practicable of an occurrence which may result in a claim. To the extent possible, notice should include:

1)  How, when, and where the occurrence took place;
2)  The names and addresses of any injured persons or witnesses; and
3)  The nature and location of any injury or damage arising out of the occurrence.

b.  If a claim is made or "suit" brought against any insured, you must:
1)  Immediately record the specifics of the clam or "suit" and the date received; and
2)  Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable

c.  You and any other involved insured must:
1)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
2)  Authorize us to obtain records and other information;
3)  Cooperate with us in the investigation and settlement or defense of the claim or "suit"; and
4)  Assist us, upon our request, in the endorsement of any right against any person or organization which may

4816-2405-6816.1

be liable to the insured because of injury or damage to
which this insurance may also apply.

(*Id.* at 13-14).

22.     The Steadfast Policy was issued and delivered to SFRTA in Pompano

Beach, Florida. (*Id.* at 8).

### D. <u>Claims Communications</u>

23.     On October 31, 2018, Maxum Insurance Company ("Maxum"), the

commercial general liability insurer for VTMI, tendered defense and indemnity of

the Underlying Action to Steadfast on behalf of VTMI. (Exhibit E-Tender by

Maxum Insurance Company).

24.     On November 21, 2018, Steadfast denied coverage to VTMI based

upon the fact that VTMI is not an insured under the Steadfast Policy issued to

SFRTA and because it provided late notice of the Underlying Action. (Exhibit F-

Tender Denial by Steadfast).

25.     Maxum's October 31 tender was the first notice Steadfast received of

the underlying accident and/or Underlying Action. (Exhibit G-Affidavit of Brian

Mark).

26.     By letter of January 25, 2019, Amtrak first tendered the defense and

indemnity of the Underlying Action to Steadfast, over two years and four months

after it was named as a defendant in the Underlying Action. (Exhibit H-Amtrak

Tender).

27.     By this point in the Underlying Action, the discovery period had ended, dispositive motions and motions in limine had been filed, one mediation had taken place, a second mediation was underway, and a trial date had been scheduled. (Exhibit C at Docket Nos. 107, 108, 122, 147, and 150).

28.     Steadfast responded to Amtrak's tender by letter of February 14, 2019, disclaiming coverage on the basis of late notice under Florida law and requesting information regarding the timeline of Amtrak's efforts to locate the Steadfast Policy. (Exhibit I-Steadfast's Disclaimer of Coverage).

29.     The parties proceeded to exchange correspondence between April 12 and October 1, 2019. (Exhibit J-Correspondence Exchanged Between Steadfast and Amtrak).

30.     During the course of this correspondence, Amtrak claimed that it first learned of the existence of the Steadfast Policy on December 21, 2018, in communications with VTMI's counsel. (*Id.* at 1-2).

31.     Amtrak further admitted that its sole effort to identify the Steadfast Policy was a single communication to SFRTA, dated August 9, 2016, wherein it requested documents and records concerning the signal failure, along with a copy of "any insurance policies and/or self-insured retention funds which SFRTA maintains" which may provide coverage for any claims arising from the underlying accident. (*Id.*) (Exhibit K-Amtrak's Communication to SFRTA, at 1-2).

-10-

32.     SFRTA did not respond to this single communication. (Exhibit J at 12).

33.     Amtrak claimed that it interpreted the fact that SFRTA did not respond to its August 9, 2016 letter to mean that the requested information did not exist. (*Id.*).

34.     Amtrak did not send a second correspondence to Amtrak or otherwise follow up to obtain the requested information. (*Id.*).

**E.  The Coverage Action**

35.     On May 15, 2020, Amtrak filed the present insurance coverage action (the "Coverage Action") against Steadfast. (Docket No. 1).

36.     On December 3, 2020, Amtrak filed an amended complaint in the Coverage Action. (Docket No. 30).

37.     Amtrak alleges that Steadfast was obligated to defend and indemnify Amtrak for the Underlying Action under the Steadfast Policy and seeks compensatory damages of $847,012.88. (Docket No. 30 at 4-5).

## LEGAL ARGUMENT

**A.  Florida Law Applies to This Dispute**

Florida follows the rule of *lex loci contractus* in determining which state's law governs the interpretation of an insurance contract. *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006); *Sturiano v. Brooks*, 523 So. 2d 1126, 1129 (Fla. 1988). *Lex loci contractus* dictates that "the law of the jurisdiction where the

contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage." *Id.* (citing *Sturiano*, 523 So. 2d at 1129). An insurance policy is construed according to the laws of the state "in which the contract is made, *i.e.*, where the last act necessary to complete the contract is done." *Fioretti v. Mass. Gen. Life Ins. Co.*, 53 F.3d 1228, 1235 (11th Cir. 1995). Under Florida law, the last act necessary to execute a policy is the receipt and acceptance of the policy by the named insured. *Adolfo House Distrib. Corp. v. Travelers Prop. & Cas. Ins. Co.*, 165 F. Supp. 2d 1332, 1336 (S.D. Fla. 2001)(law of state where policy was delivered applied); *Mid-Continent Cas. Co. v. Basdeo*, 742 F. Supp. 2d 1293, 1322 (S.D. 2010)(applying Florida law because the insured's Florida mailing address suggested the policy was delivered in Florida); *James River Ins. Co. v. Fortress Sys., Ltd. Liab. Co.*, 2012 U.S. Dist. LEXIS 30690 at *5-6 (S.D. Fla. Mar. 8, 2012)(same); *Creative Hosp. Ventures, Inc. v. United States Liab. Ins. Co.*, 655 F. Supp. 2d 1316, 1324-1325 (S.D. Fla. 2009)(Florida law applied because general liability policies were issued to insured in Florida. Additionally, the insured's business was located in Florida); *Sparta Ins. Co. v. Colareta*, 990 F. Supp. 2d 1357, 1362-1363 (S.D. Fla. 2014)(Florida law applied because the policy was delivered in Florida. Additionally, the insured was located in Florida, and the underlying accident occurred in Florida).

Here, the Steadfast Policy was issued to SFRTA in Florida. (Exhibit D at 8). Further, SFRTA is a Florida entity and the underlying accident took place in Florida. Accordingly, Florida law applies to this dispute.

**B.  Amtrak Is Not Entitled to Coverage Because of Late Notice**

The Steadfast Policy requires that notice of an occurrence which may result in a claim be provided to Steadfast "as soon as practicable". (Exhibit D at 13-14). Amtrak was named as a defendant in the Underlying Action, which was filed on September 16, 2016. (Exhibit A). Amtrak did not tender notice of the Underlying Action to Steadfast until January 25, 2019, over two years and four months later. (Exhibit H).

Under Florida law, the insured's failure to provide timely notice of loss in contravention of a policy provision is a legal basis for the denial of recovery under the policy. *Aseff v. Catlin Specialty Ins. Co.*, 115 F. Supp. 3d 1364, 1369 (S.D. Fla. 2015) (quoting *Ideal Mut. Ins. Co. v. Waldrep*, 400 So. 2d 782, 785 (Fla. Dist. Ct. App. 1981)). Policy provisions that require timely or prompt notice mean that notice must be given "within a reasonable time in view of all the facts and circumstances of the particular case." *Laster v. United States Fidelity & Guaranty Co.*, 293 So. 2d 83, 86 (Fla. 3d DCA 1974) (quoting *Employers Casualty Co. v. Vargas*, 159 So. 2d 875, 877 (Fla. 2d DCA 1964)). A two-step analysis determines whether an insured's

untimely reporting of loss results in the denial of coverage. *1500 Coral Towers Condo. Ass'n v. Citizens Prop. Ins. Corp.*, 112 So. 3d 541, 543-45 (Fla. 3d DCA 2013). The first step focuses on whether the insured provided timely notice. *Id.* at 543. The second step addresses whether the insurer was prejudiced by the late notice. *Id. See also Laquer v. Citizens Prop. Ins. Corp.*, 167 So. 3d 470, 473 (Fla. Dist. Ct. App. 2015). An analysis of both steps shows that Amtrak is not entitled to coverage because of late notice.

i.   <u>A Delay of Over Two Years in Providing Notice Constitutes Late Notice</u>

With regard to the first step, Florida courts have routinely held that delays shorter than the one in this case constituted late notice, thereby precluding coverage. *See e.g. Rodriguez v. Citizens Prop. Ins. Corp.*, 2013 Fla. Cir. LEXIS 16681 at *1 (11th Cir. 2013) (a delay of over two years was deemed late notice); *Wheeler's Moving & Storage, Inc. v. Markel Ins. Co.*, 2012 U.S. Dist. LEXIS 125726, at *7-8 (S.D. Fla. Sep. 4, 2012)(an 18-month delay was deemed late notice). Therefore, Amtrak's two year and four-month delay constitutes late notice under Florida law.

ii.   <u>Steadfast Is Presumed Prejudiced by Amtrak's Late Notice</u>

As discussed above, Amtrak's notice was untimely. Once it is established that notice is untimely, Florida courts consider the second step, whether the insurer was prejudiced by the untimely notice. *1500 Coral Towers Condo. Ass'n v.*

*Citizens Prop. Ins. Corp.*, 112 So. 3d 541, 543-45 (Fla. 3d DCA 2013). Under Florida law, an insurer is automatically presumed prejudiced, and the burden of showing absence of prejudice is on the insured. *See e.g. Bankers Ins. Co. v. Macias*, 475 So. 2d 1216, 1217 (Fla. 1985); *National Gypsum Co. v. Travelers Indem. Co.*, 417 So. 2d 254, 256 (Fla. 1982); *1500 Coral Towers Condominium Ass'n, Inc. v. Citizens Property Ins. Corp.*, 112 So. 3d 541, 542 (Fla. Dist. Ct. App. 2013). *See also Hartford Acci. & Indem. Co. v. Mills,* 171 So. 2d 190, 195 (Fla. Dist. Ct. App. 1965) (the rule is that it is unnecessary for the insurer to show that it was prejudiced by the neglect of the insured in order to assert the policy defense of breach of the "notice" clauses, it being frequently stated that prejudice is presumed under these circumstances). The burden is therefore on the insured to show that the insurer was *not* prejudiced by the untimely notice. *Deese v. Hartford Acci. & Indem. Co.,* 205 So. 2d 328, 332 (Fla. Dist. Ct. App. 1967) (in late notice cases, "no burden rests on the insurer to show that it was prejudiced by the insured's delay in giving the notice as required by the terms of the policy…the burden rests upon the one seeking to impose liability to show that no prejudice did, in fact, occur").

Accordingly, the burden is on Amtrak to show that Steadfast was *not* prejudiced by its late notice. Amtrak offers no evidence whatsoever in support of its position. Therefore, it has failed to meet its burden. This failure, by itself, is sufficient to warrant a denial of coverage on the basis of late notice without

Steadfast having to show that it was prejudiced. Nonetheless, the facts of this case establish that Steadfast was in fact *substantially* prejudiced by the delay.

The purpose of a provision of notice in an insurance policy is to enable the insurer to evaluate its rights and liabilities, to afford it an opportunity to make a timely investigation, and to prevent fraud and imposition. *Laster v. U.S. Fid. & Guar. Co.,* 293 So. 2d 83, 86 (Fla. 3d DCA 1974).  Prejudice to an insurer occurs as the result of untimely notice when "the underlying purpose of the notice requirement was frustrated by the late notice." *Kendall Lakes Towers Condo. Ass'n v. Pac. Ins. Co.*, 2012 U.S. Dist. LEXIS 10749, at *12 (S.D. Fla. Jan. 30, 2012) (quoting 13 CROUCH ON INSURANCE § 192:28 (Thompson West 3d ed. 2005)). Prejudice is a substantial likelihood that the insurer could have prevailed in the underlying action or could have settled the claim for a smaller sum absent the untimely notice. *Id*. at *12-13. Thus, prejudice to the insurer results if the untimely notice substantially disadvantages the insurer's ability to: (1) investigate a claim; (2) defend a claim; or (3) to mitigate damages through settlement or early repairs. *Id*. (quoting *Cf.* 13 CROUCH ON INSURANCE § 192:29).

Here, the Underlying Action was filed in September 2016 and was ongoing for two years and four months by the time Amtrak provided notice to Steadfast in January 2019. (Exhibit H). By this time, discovery was complete, dispositive motions had been filed, one mediation had taken place, and a second mediation

was under way. (Exhibit C at Docket Nos. 107, 108, 122, 147, and 150). The Underlying Action settled only ten months later in November 2019. (*Id.* at Docket No. 299). As a result of Amtrak's delay in providing notice, Steadfast was unable to defend the claim from its inception, properly evaluate the case, oversee motion practice, pursue an early settlement, or meaningfully participate in either mediation. Though Steadfast does not bear the burden of proof regarding the issue, the facts still demonstrate that it was prejudiced by Amtrak's delay in providing notice of the Underlying Action.

### C.  Amtrak Did Not Perform Due Diligence to Locate the Steadfast Policy

Amtrak argues that its late notice should be excused because it failed to verify the existence of the Steadfast Policy until over two years after the Underlying Action was filed. (Exhibit J at 1-2). However, this failure is attributable to the fact that Amtrak's sole effort to locate the Steadfast Policy was a single correspondence. (*Id.*) (Exhibit K at 1-2).

Under Florida law, an insured is required to exercise due diligence in order to comply with a policy's notice requirements. *Reliance Life Ins. Co. v. Lynch*, 144 Fla. 50, 54 (1940). Courts across the country have recognized this obligation, holding that an insured's failure to exercise due diligence in locating a policy does not excuse late notice of a claim, even if the insured was not named under the policy or did not initially know of its existence. *See Standifer v. Aetna Cas. & Sur.*

*Co.*, 319 F. Supp. 1385, 1388 (N.D. Ala. 1970)(applying Alabama law)("[an] insured without knowledge of the policy's existence or the insurer's identity is bound by policy conditions governing notice and forwarding of suit papers, and his failure to use due diligence in pursuing available means of ascertaining the existence and terms of the policy resulting in unreasonable delay in complying with its conditions will relieve the insurer of liability"); *OneBeacon America Ins. Co. v. Catholic Diocese of Savannah*, 477 Fed. Appx. 665, 672 (11th Cir. 2012) (applying Georgia law)(an insured's failure to timely locate a policy did not excuse late notice because the insured was not able to show that it exercised diligence in locating the policy and providing notice); *Weitz Co., LLC v. Lexington Ins. Co.*, 982 F. Supp. 2d 975, 1001 (S.D. Iowa 2013) (applying Iowa law)(an insured's lack of knowledge regarding coverage may excuse noncompliance with a notice provision if the insured exercised due diligence by not acting negligently and made a reasonable effort to discover the existence of coverage, but late notice was not excused where the record did not show such a reasonable effort was made); *Travelers Indem. Co. v. U.S. Silica Co.*, 237 W. Va. 540, 548 (2015)(applying West Virginia law)(an insured's excuse that it was not aware of the existence of a policy was not a reasonable excuse for its delay in providing notice); *Ill. Nat'l Ins. Co. v. Arch Specialty Ins. Co.*, 2013 NY Slip Op 30230(U), ¶¶ 6-7 (Sup. Ct. 2013)(applying New York law)("[i]t is well-settled that one seeking coverage under another's

insurance policy must demonstrate that it acted with as much due diligence as possible in ascertaining the identity of the additional insurer and providing that insurer with timely notice….[the insured's] passive waiting to be made aware of the [policy] and its failure to take any steps to timely request or obtain insurance information it knew likely existed does not constitute sufficient due diligence to excuse late notice"); *Lawler v. Gov't Emps. Ins. Co.*, 569 So. 2d 1151, 1158 (Miss. 1990)(applying Mississippi law)("[an] additional, unnamed insured - like any other insured - must act reasonably and diligently in ascertaining the existence of insurance coverage"); *Hosp. Underwriting Grp. v. Summit Health*, 63 F.3d 486, 493 (6th Cir. 1995)(applying Tennessee law)(even though the insureds were not named under an excess policy, their late notice was not excused because they failed to exercise due diligence in discovering the policy); *Am. Bankers Ins. Co. v. Nat'l Fire Ins. Co.*, 488 F. Supp. 3d 892, 902 (N.D. Cal. 2020)(applying California law)(insured's claim that it did not know of the existence of the policies did not excuse late notice absent evidence that the insured exercised due diligence in locating the policies); *Fairmount Park, Inc. v. Travelers Indem. Co.*, 982 F. Supp. 2d 864, 872 (S.D. Ill. 2013)(applying Illinois law)(the plaintiff's argument that it did not know the policy existed because the policy was purchased by and issued to another party did not excuse late notice because "little if any diligence" was exercised in locating the policy).

Courts determining what constitutes due diligence have required more than a single correspondence on the part of the insured. *Cincinnati Ins. Co. v. Menards, Inc.*, 2017 U.S. Dist. LEXIS 89082 (S.D. Ill. June 9, 2017). In *Menards*, the court excused late notice because the insured's counsel "exercise[d] diligence in her quest to obtain the applicable insurance policies". *Id*. at *20. Specifically, counsel propounded interrogatories and requests for the production of documents regarding the policy, wrote letters to opposing counsel inquiring about the policies, asked pertinent questions in depositions, and subpoenaed the policy directly from the insurer upon learning of its existence. *Id*. When discovery stalled through no fault of counsel's, she contacted opposing counsel in writing to demand that he comply with discovery requests specifically including insurance information, again contacted opposing counsel after receiving no answer, and appeared at a hearing to personally press opposing counsel to produce the policy. *Id*. at *21. In the words of the court, counsel "did not sit on her hands during the 18-months after the initial litigation was filed. She used every discovery tool at her disposal to obtain a copy of [the insurance policy]". *Id.* at *20. Courts have held that reliance on unanswered requests for insurance information did not constitute reasonable effort to ascertain the existence of a policy. *Tower Ins. Co. of N.Y. v. Commissary Direct, Inc.*, 2019 NY Slip Op 50792 (U) (Sup. Ct. 2019). In *Tower*, a property owner sought coverage for an underlying personal injury claim under a

policy issued to its lessee. *Id*. at *2-3. The lessee's insurer denied coverage on the basis that notice was provided over two years after the action was filed. *Id*. at *8-9. The owner argued that "all parties repeatedly requested [the lessee's] insurance information through discovery demands and correspondence" and that it relied on the lessee's failure to disclose the existence of its insurance coverage in response to those demands as evidence that the policy did not exist. *Id*. at *10-11. The owner maintained that it provided notice to the insurer as soon as it learned of the policy. *Id.* at *11. The court held that the owner's reliance on unanswered discovery demands to determine that coverage did not exist did not excuse its late notice. *Id.* at *15-16. *See also OneBeacon America Ins. Co. v. Catholic Diocese of Savannah*, 477 Fed. Appx. 665, 672 (11th Cir. 2012) (the insured's attorney's affidavit that he contacted the insured's insurance agent to determine which coverage was available, and the insurance agent failed to timely disclose the existence of the policy, was insufficient to establish due diligence).

Here, Amtrak did not perform due diligence in locating the Steadfast Policy. Amtrak was familiar with the terms of the Agreement, which specifically required the procurement of a railroad protective policy naming SFRTA as an insured. (Exhibit B at 22-23). Despite knowledge that such a policy must have existed, Amtrak's sole effort to locate the Steadfast Policy was a single correspondence to SFRTA's counsel requesting copies of SFRTA's insurance policies. (Exhibit K at 1-

2).   Amtrak did not receive a response from SFRTA, and interpreted SFRTA's silence to mean that SFRTA did not have any insurance policies. (Exhibit J at 12). This interpretation was patently unreasonable in light of the fact that Amtrak was aware that the Agreement *required* the procurement of a railroad protective insurance policy naming SFRTA as an insured for the very project at the heart of the underlying accident. (Exhibit B at 22-23). Even in the absence of the Agreement, the belief that a regional transportation authority would be entirely without insurance, based on nothing more than its failure to respond to a single letter, is unreasonable. Rather than following up after not receiving a response to its correspondence or pursuing policies through discovery in the Underlying Action, Amtrak did nothing until it was informed of the Steadfast Policy months later. The undisputed factual record shows that Amtrak failed to exercise due diligence in locating the Policy.

### D. Legal Standard

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those materials that demonstrate the absence of a

genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Generally, where a defendant is moving for summary judgment on the plaintiff's claim, the defendant may satisfy this burden in one of two ways. The defendant may submit evidence that negates the existence of a material element of the plaintiff's claim or the defendant may show that there is no evidence to support an essential element of the plaintiff's claim. *See Id.* at 325. It is not necessary that the defendant introduce evidence that negates the plaintiff's claim. *See Id.* at 323. Once the movant satisfies this requirement, the burden shifts to the non-moving party to come forward with the specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 584 (1986).

Based on the present record, Steadfast's Motion for Summary Judgment should be granted.

## CONCLUSION

For the foregoing reasons, Steadfast Insurance Company's Motion for Summary Judgment should be granted, and the Court should issue an order declaring that Steadfast Insurance Company has no duty to defend and/or indemnify Amtrak for the Underlying Action.

Respectfully submitted,

**LEWIS BRISBOIS BISGAARD
& SMITH LLP**
110 SE 6th Street, Suite 2600
Fort Lauderdale, FL 33301

4816-2405-6816.1

Telephone: 954.728.1280
Facsimile: 954.728.1282

*/s/ Bradley s. Fischer_____*
**BRADLEY S. FISCHER, ESQ.**
Florida Bar No. 716553
bradley.fischer@lewisbrisbois.com
*Counsel for Steadfast Insurance Company*

**COUGHLIN MIDLIGE & GARLAND LLP**
350 Mount Kemble
Morristown, NJ 07962
Telephone: 973-267-0058

*/s/Adam M. Smith*
**ADAM M. SMITH, ESQ**.
Admitted *pro hac vice*
New Jersey Bar No.: 043341994
asmith@cmg.law
*Co-Counsel for Steadfast Insurance Company*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 2, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached service list in the manner specified, either via transmission of notices of electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically notices of filing.

By:   */s/ Bradley S. Fischer*
**BRADLEY S. FISCHER, ESQ.**
Florida Bar No. 716553
bradley.fischer@lewisbrisbois.com

-24-

**SERVICE LIST**

Daniel J. Fleming, Esq.
Daniel A. Hoffman, Esq.
Johnson Pope, LLP
401 East Jackson Street, Suite 3100
Tampa, Florida 33602
(813) 225-2500
DFleming@jpfirm.com
Dhoffman@jpfirm.com
SMartin@jpfirm.com
*Counsel for Plaintiff*