## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

NATIONAL RAILROAD
PASSENGER CORPORATION,
d/b/a AMTRAK,

      Plaintiff,

v.                                  Case No: 8:20-cv-1134-CEH-CPT

STEADFAST INSURANCE
COMPANY,

      Defendant.
_____/

## <u>ORDER</u>

      This matter comes before the Court on Defendant Steadfast Insurance Company's Motion for Summary Judgment (Doc. 43), Plaintiff's memorandum in opposition (Doc. 48), Plaintiff's Motion for Final Summary Judgment (Doc. 45), Defendant's response in opposition (Doc. 47), Defendant's reply (Doc. 49), and the parties' Joint Stipulation of Facts and Exhibits (Doc. 51).  The Court, having considered the motions and being fully advised in the premises, will grant Defendant Steadfast Insurance Company's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment.

## I.      BACKGROUND AND FACTS[1]

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including the parties' Joint Stipulation of Facts and Exhibits (Doc. 51), depositions, affidavits and attachments thereto.

This insurance coverage action arises out of a personal injury lawsuit resulting from a collision between a train and a motor vehicle at a railroad crossing in West Palm Beach, Florida (the "*Lee* lawsuit"). Doc. 51-1. Defendant Steadfast Insurance Company ("Steadfast") insured South Florida Regional Transportation Authority ("SFRTA"), a Florida state agency, which acted as the regional transportation authority over the railroad where the accident occurred. *Id.* ¶ 13. Plaintiff National Railroad Passenger Corporation d/b/a Amtrak ("Amtrak") acted as the passenger service agent on the railroad, operating the locomotives. *Id.* ¶ 16.

Veolia Transportation Maintenance and Infrastructure, Inc. ("VTMI") is a railroad transport services provider, responsible for operating and maintaining railroad tracks. *Id.* ¶¶ 13-14. The Florida Department of Transportation ("FDOT") owned the rail corridor where the accident took place. Doc. 51-2. At the time of the accident, SFRTA and FDOT entered into a maintenance of way agreement ("the Agreement") with VTMI to provide railroad infrastructure and maintenance services on the railroad. *Id.*

On July 6, 2016, VTMI agent Alberto Perez was performing relay testing pursuant to the Agreement, during which he deactivated the signals and gate arms at one of the railroad's automobile crossings. Doc. 51-1 at ¶ 15. Mr. Perez allegedly failed to notify the train operators that the signals were deactivated. *Id.* ¶ 24. Due to the deactivation of the crossing signals, motor vehicles were not warned of oncoming trains before crossing the tracks. *Id.* ¶ 29.

Amtrak employees Russell Griffin and James Knox were operating a locomotive that was approaching a crossing. *Id.* ¶¶ 19-20. The locomotive was unable to stop, and struck a vehicle operated by 24-year-old Tairia Lee as it was driving over the crossing, causing Ms. Lee to be severely injured. *Id.* ¶¶ 17, 25.

By letter to SFRTA of August 9, 2016, Amtrak requested documents and records concerning the signal failure, along with a copy of "any insurance policies and/or self-insured retention funds which SFRTA maintains" which may provide coverage for any claims arising from the underlying accident. Doc. 51-3. SFRTA did not respond to this letter. Doc. 51 ¶ 13. On September 16, 2016, Ms. Lee and LaShawne Josaphat as her guardian filed the *Lee* lawsuit against Mr. Perez, Mr. Griffin, Mr. Knox, VTMI, and Amtrak in Palm Beach County, Florida, Civil Division, captioned *Lee and Josephat v. Perez*, *et al.* Doc. 51-1.

On October 17, 2016, the *Lee* lawsuit was removed to the United States District Court for the Southern District of Florida, West Palm Beach Division, under docket no. 9:16-cv-81745, where SFRTA was later added as a defendant. Doc. 51-4. In November 2019, the *Lee* lawsuit settled and the action was dismissed. *Id.* at 30.

 Approximately two years before the accident, on August 19, 2014, SFRTA and VTMI entered into an Agreement, under which VTMI was to provide maintenance services on the SFRTA railroad. Doc. 51-2.  Section 2.9.13 of the Agreement provides:

> [VTMI shall procure] Railroad Protective Insurance with a limit of not less than Two Million Dollars ($2,000,000) per occurrence/Six Million Dollars ($6,000,000) aggregate applying to Bodily Injury Liability, Property Damage Liability, or Physical Damage to property or a combination

3

> of all three. The aggregate limit shall apply separately to each job, contract, agreement, project or work order. SFRTA, FDOT, and CSX Transportation, Inc., are to be included as "Named Insureds."

*Id.* at 22–23.

Section 2.9.3 of the Agreement requires VTMI to furnish certificates of insurance for the policies it procures. *Id.* at 20.

Steadfast issued to SFRTA policy no. SCO 0083695-00 for the policy period December 12, 2014 to December 12, 2019 (the "Steadfast Policy"). Doc. 51-5. The Steadfast Policy contains the following insuring agreement:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any occurrence and settle any claim or "suit" that may result.

*Id.* at 10.

The Steadfast Policy also contains the following named insured provisions:

> SECTION II-WHO IS AN INSURED
> 1. You are an insured.
> 2. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers and directors.
> 3. Your stockholders are insureds, but only with respect to their liability as stockholders.
> 4. *Any railroad operating over your tracks is an insured.*

*Id.* at 12 (emphasis added).

The Steadfast Policy includes the following notice provision:

> 2. Duties in the Event of Occurrence, Claim or Suit

4

a. You must see to it that we are notified as soon as practicable of an occurrence which may result in a claim.

  To the extent possible, notice should include:

  1) How, when, and where the occurrence took place;

  2) The names and addresses of any injured persons or witnesses; and

  3) The nature and location of any injury or damage arising out of the occurrence.

b. If a claim is made or "suit" brought against any insured, you must:

  1) Immediately record the specifics of the claim or "suit"

  and the date received; and

  2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable

c. You and any other involved insured must:

  1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

  2) Authorize us to obtain records and other information;

  3) Cooperate with us in the investigation and settlement or defense of the claim or "suit"; and

  4) Assist us, upon our request, in the endorsement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

*Id.* at 14–15.

On October 31, 2018, Maxum Insurance Company ("Maxum"), the commercial general liability insurer for VTMI, tendered VTMI's defense and indemnity of the *Lee* lawsuit to Steadfast. Doc. 51-6. On November 21, 2018, Steadfast denied coverage to VTMI based upon the fact that VTMI is not an insured under the Steadfast Policy issued to SFRTA and because VTMI provided late notice of the underlying *Lee* lawsuit. Doc. 51-7.

By letter of January 25, 2019, Amtrak first tendered the defense and indemnity of the *Lee* lawsuit to Steadfast. Doc. 51-8. Steadfast responded to Amtrak's tender by letter of February 14, 2019, disclaiming coverage on the basis of late notice under Florida law and requesting information regarding the timeline of Amtrak's efforts to locate the Steadfast Policy. Doc. 51-9. Amtrak responded by letter of April 12, 2019, reasserting Steadfast's duty to defend and indemnify Amtrak and stating that it first became aware of the existence of the Steadfast Policy on December 21, 2018. Doc. 51-10.

Steadfast responded by letter of July 29, 2019, reiterating its disclaimer of coverage. Doc. 51-11. Amtrak responded by letter of August 30, 2019, reasserting its position that Steadfast had a duty to defend and indemnify Amtrak. Doc. 51-12. Steadfast responded by letter of October 1, 2019, reasserting its disclaimer of coverage. Doc. 51-13.

On May 15, 2020, Amtrak filed the present insurance coverage action (the "Coverage Action") against Steadfast. Doc. 1. On December 3, 2020, Amtrak filed an amended complaint in the Coverage Action. Doc. 30. Amtrak alleges that Steadfast was obligated to defend and indemnify Amtrak for the *Lee* lawsuit under the Steadfast Policy and seeks compensatory damages of $847,012.88. Doc. 30 at 4–5.

## II.    LEGAL STANDARD

### A.    Cross-Motions for Summary Judgment

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. However, a party cannot defeat summary judgment by relying upon conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 F. App'x 852, 858 (11th Cir. 2006).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed. *Am. Bankers Ins. Group v. United States*, 408 F.3d 1328,

1331 (11th Cir. 2005). The Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* The Eleventh Circuit has explained that "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984). Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts. *Id.* at 1555–56.

## B.    Applicable Law

Steadfast argues that Florida law applies to the issues before the Court. Doc. 43 at 11–13. Under Florida law, courts determining which state's law governs contracts will apply the doctrine of *lex loci contractus*, which provides that "the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage." *State Farm Mut. Auto Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006) (citing *Sturiano v. Brooks*, 523 So. 2d 1126, 1129 (Fla. 1988)). The Steadfast policy was issued to SFRTA in Florida. In its motion, Amtrak similarly relies on Florida case law. The Court agrees that Florida law governs this dispute.

III.   **DISCUSSION**

It is undisputed that, at all relevant times, Amtrak was an insured under the Steadfast policy. *See* Doc. 51-5 at 12 ("Any railroad operating over your tracks is an insured."). Additionally, the parties agree that the Steadfast Policy was in effect on July 6, 2016, the date of the accident. *See id.* (policy period from December 12, 2014 to December 12, 2019); *see also* Doc. 45-2 at 1. The issue before the Court is whether Steadfast breached the insurance contract by declining to defend and indemnify its insured Amtrak under the Steadfast Policy for the *Lee* lawsuit. Steadfast claims it properly declined defense and indemnification because Amtrak failed to timely notify it of the loss as required by the policy and Amtrak is unable to overcome the presumption that Steadfast has been prejudiced.

Under Florida law, the "question of whether an insured's untimely reporting of loss is sufficient to result in the denial of recovery under the policy implicates a two-step analysis." *LoBello v. State Farm Fla. Ins. Co.*, 152 So. 3d 595, 599 (Fla. 2d DCA 2014) (citations omitted). The first step is to determine whether the insured provided timely notice. *Id.* If notice is determined to be timely, as Amtrak argues, then Amtrak prevails. If notice was untimely, however, a presumption of prejudice in favor of Steadfast arises and it is Amtrak's burden to rebut the presumption by showing that the insurer has not been prejudiced. *Bankers Ins. Co. v. Macias*, 475 So. 2d 1216, 1218 (Fla. 1985).

### A.    Notice

The failure to give timely notice is a "legal basis for the denial of recovery under the policy." *Ideal Mut. Ins. Co. v. Waldrep*, 400 So. 2d 782, 785 (Fla. 3d DCA 1981). The insurance policy at issue here required the named insured, SFRTA, to notify Steadfast "as soon as practicable of an occurrence which may result in a claim." Doc. 51-5 at 14. Additionally, the policy provided that

> [SFRTA] and *any other involved insured* must:
> 1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
> 2) Authorize us to obtain records and other information;
> 3) Cooperate with us in the investigation and settlement or defense of the claim or "suit"; and
> 4) Assist us, upon our request, in the endorsement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

*Id.* at 15. It is clear that Amtrak did not immediately send any documents, notices, demands, or legal papers to Steadfast.

The Eleventh Circuit, in analyzing cases under Florida law noted, "there is no 'bright-line' rule under Florida law setting forth a particular period of time beyond which notice cannot be considered 'prompt.'" *Yacht Club on the Intracoastal Condo. Ass'n, Inc. v. Lexington Ins. Co.*, 599 F. App'x 875, 879 (11th Cir. 2015) (citing *Kings Bay Condo. Ass'n, Inc. v. Citizens Prop. Ins. Corp.*, 102 So.3d 732 (Fla. 4th DCA 2012)). Rather, because the reasonableness and promptness of the notice necessarily relies on the facts and circumstances in any given case, Florida courts have found that notice

several years after an occurrence may be considered "prompt" in some cases, but not others. *Yacht Club on the Intracoastal Condo. Ass'n,* 599 F. App'x at 879.

In *Yacht Club on the Intracoastal*, the plaintiff insured did not notify its insurer of the hurricane loss because it believed the extent of the damages would not exceed the policy's $100,000 deductible. The appellate court, in affirming summary judgment for the insurance carrier, concluded "[w]hatever concerns the Board had about the extent of damage and its deductible are not relevant under Florida law. Prompt notice is not excused because an insured might not be aware of the full extent of damage or that damage would exceed the deductible." *Id.* at 880 (citations omitted). Florida courts have also not excused late notice where the extent of the damages is unknown. *See, e.g., 1500 Coral Towers Condo. Ass'n, Inc. v. Citizens Prop. Ins. Corp.*, 112 So. 3d 541, 544 (Fla. 3d DCA 2013) (where insured knew in December 2005 that estimate to repair damages was $259,269.20, delay in notice not excused by question of whether damages would exceed policy deductible); *Waldrep*, 400 So.2d at 785 ("the insured could not wait until the full extent of the damage to the aircraft was apparent, because the policy covered any 'occurrence' resulting in injury to the aircraft")).[2]

---

[2] It is apparent from review of the *Lee* litigation filings that there were numerous insurance policies in play. *See, e.g.*, Doc. 51-6 (referencing VTMI's insurance carrier Maxum Indemnity Company), Doc. 45-13 (referencing FDOT's $10 million self-insurance retention fund). It is not for this Court to speculate the reason that Amtrak did not diligently seek to identify the SFRTA policy after receiving no response from its single correspondence to SFRTA's counsel. But, to the extent that Amtrak was not diligent in locating the Steadfast policy because it did not anticipate that the damages would exceed the other insurance coverage available in the case, such reasoning has been rejected by Florida courts.

In a light favorable to Amtrak, it had no knowledge of the Steadfast policy until late 2018. Here, Amtrak argues that its January 2019 notice of the loss to Steadfast was reasonable and as soon as practicable because it provided Steadfast with notice within five to six weeks of Amtrak's learning of the existence of the Steadfast policy at the *Lee* mediation. Steadfast, on the other hand, asserts that the notice provided over two years and four months after the date of loss was unreasonable and untimely. Plaintiff responds that, at a minimum, it is a question of fact for the jury to decide as to whether notice to Steadfast was promptly given.

Under Florida law, "[a] policy provision relating to the time when notice of an [occurrence] must be given, and containing language such as, 'as soon as practicable,' means notice given with reasonable dispatch and within a reasonable time in view of all the facts and circumstances of the particular case." *Laster v. U.S. Fid. & Guar. Co.*, 293 So. 2d 83, 86 (Fla. 3d DCA 1974) (citation omitted). Plaintiff is correct that whether notice is timely can be a question of fact for the jury. *Clena Invs., Inc. v. XL Specialty Ins. Co.,* No. 10-cv-62028, 2012 WL 1004851, at *4 (S.D. Fla. Mar. 26, 2012). However, "when the undisputed factual record establishes notice is so late that no reasonable juror could find it timely, Florida courts will deem the notice untimely as a matter of law." *Id.* (four-year delay untimely as a matter of law); *Midland Nat'l Ins. Co. v. Watson*, 188 So. 2d 403, 405 (Fla. 3d DCA 1966) (two-year delay untimely as a matter of law); *Kroener v. Fla. Ins. Guar. Ass'n*, 63 So.3d 914, 916 (Fla. 4th DCA 2011) ("as a matter of law, notice to the insurer of a claim of loss more than two years and two months after the loss occurred was not prompt notice").

On the undisputed facts of this case, it is apparent that Amtrak did not give timely notice to Steadfast as required by the insurance policy. The accident in which Ms. Lee sustained serious injuries occurred in July 2016. There appears no dispute to all who were aware of the accident at that time that a claim would result. Amtrak became aware of the accident almost immediately, as two of its employees were operating the locomotive that struck Ms. Lee's vehicle. In August 2016 Amtrak sent a letter to counsel for SFRTA requesting a copy of "any insurance policies and/or self-insured retention funds which SFRTA maintains" which may provide coverage for any claims arising from the underlying accident.[3] Doc. 51-3. Additionally, the letter requested eight categories of materials including, among other things, the warning signals' crossing data recorder, reports prepared by signal managers, inspection and test records, and any physical evidence inside the signal box from immediately before, during and after the accident. *Id.* at 2–3. Amtrak also requested a meeting to review the materials and to confirm they were preserved. *Id.* at 3. Amtrak received no response to its letter.[4] Doc. 51 ¶ 13.

On September 16, 2016, Ms. Lee sued Amtrak, VTMI, and others for negligence in a seven-count complaint filed in state court. Doc. 51-1. The action was removed to

---

[3] It is undisputed that under the agreement between SFRTA and VTMI that VTMI was required to procure railroad protective liability insurance. Doc. 51-2 at 23.

[4] Amtrak's motion does not indicate when Amtrak first had access to those materials, whether the materials requested were preserved, or whether a meeting with SFRTA's counsel ever occurred.

federal court on October 17, 2016. Doc. 51-4.[5] Once in federal court, Lee moved to amend her complaint, which the court granted, and added SFRTA as a named Defendant in May 2017. *Id.* at 10 (Docs. 59, 60). SFRTA is the named insured on the Steadfast Policy at issue here, but the evidence of record reflects that SFRTA did not seek a defense and coverage under the Steadfast Policy until January 2019. Doc. 45-13 at 1.

SFRTA moved to dismiss Lee's Amended Complaint arguing that Eleventh Amendment immunity barred the negligence claim brought in federal court against SFRTA, an agency of the State of Florida. Doc. 51-4 at 11 (Doc. 62). On July 6, 2017, the district judge granted SFRTA's motion to dismiss, in part, and remanded Lee's claim against SFRTA to state court.[6] *Id.* at 11 (Doc. 68). A mediation was conducted on November 30, 2017, which was unsuccessful. *Id.* at 15 (Doc. 107). VTMI moved for summary judgment in December 2017 and Amtrak moved for partial summary judgment on the issue of statutory immunity under Fla. Stat. § 768.28, in February 2018. *Id.* at 15, 16 (Docs. 108, 122). The district judge denied both motions in July 2018. *Id.* at 17 (Doc. 135). The *Lee* lawsuit was initially scheduled for trial in June 2017

---

[5] The parties filed as an exhibit to their stipulation the docket from the underlying *Lee* case. *See* Doc. 51-4. The exhibit contains live links to the pleadings filed in the underlying case. Reference to those pleadings are made by reference to the CM/ECF page number of the exhibit, followed by the pleading docket number in the *Lee* case.

[6] The court noted that if SFRTA had removed the case to federal court, it would have waived the applicability of Eleventh Amendment immunity, *see Lapides v. Board of Regents of University System of Ga.*, 535 U.S. 613, 616 (2002) (the Supreme Court held that the "State's act of removing a lawsuit from state court to federal court waives [Eleventh Amendment] immunity"). However, SFRTA was added as a party after removal.

but was continued six times until ultimately being rescheduled for November 2019. *Id.* at 6, 10, 14, 16, 22, 26, 28 (Docs. 9, 58, 94, 120, 195, 242, 273). The case settled in October 2019 and was closed in November 2019. *Id.* at 29, 20 (Docs. 292, 299).

Based on the record, as a matter of law, the Court finds that notice to Steadfast was untimely under the policy, and no reasonable trier of fact could conclude otherwise. *See PDQ Coolidge Formad, LLC v. Landmark Am. Ins. Co.*, 566 F. App'x 845, 849 (11th Cir. 2014) (collecting cases and noting that Florida courts have held that a six-month or less period is considered late notice); *Wheeler's Moving & Storage, Inc. v. Markel Ins. Co.*, No. 11-80272-CIV, 2012 WL 3848569, at *6 (S.D. Fla. Sept. 5, 2012) (finding notice provided two years after the occurrence and eighteen months after suit was filed untimely as a matter of law).

Amtrak argues that an insured's due diligence is inapplicable, but the Court disagrees. The Eleventh Circuit's opinion in *OneBeacon America Ins. Co. v Catholic Diocese of Savannah*, 477 F. App'x 665 (11th Cir. 2012) is persuasive on the issue of late notice where an insured is unaware that a policy existed. Although the *OneBeacon* case involved application of Georgia law, the requirements for notice under Florida and Georgia state law are the same. *See Kirkland v. Guardian Life Ins. Co. of Am.*, 352 F. App'x 293, 296 (11th Cir. 2009) (observing both "Florida and Georgia law require notice within a reasonable period of time, unless compliance is impossible or unreasonable") (citing *Reliance Life Ins. Co. of Pittsburgh, Pa. v. Lynch*, 197 So. 723, 724–25 (1940) and *N. Am. Ins. Co. v. Watson*, 64 S.E. 693, 695 (1909)).

In *OneBeacon*, the court found that the latest date the Catholic Diocese learned of the injured plaintiff's sexual assault claims was in April 2006 when the Diocese was served with a copy of the summons and complaint. 477 F. App'x at 671. The Diocese did not provide notice to the insurer OneBeacon until January 2008, approximately 21 months later. *Id.* The district court found the delay in notice to be unreasonable notwithstanding the Diocese's argument that the delay was justified because it provided notice as soon as it discovered the insurance policies in question. *Id.* On appeal to the Eleventh Circuit, the Diocese argued that the circumstances of this case were unique because the policies in question were issued 26 to 33 years prior to the lawsuit. The appellate court, in affirming the district court's grant of summary judgment in the insurer's favor and in rejecting the Diocese's argument, found that the Diocese failed to present sufficient evidence about its proposed justification or its due diligence in providing notice to OneBeacon to create a question of fact for the jury. *Id.* The only evidence presented was the affidavit of the Diocese's attorney which provided in conclusory manner that when served with the complaint, the Diocese contacted its former insurance agent to determine what coverage was available. *Id.* at 672. The affidavit indicates that initially only a Catholic Mutual policy was discovered and subsequently the policy in question was discovered, after which the Diocese tendered defense of the lawsuit. *Id.* The Eleventh Circuit found significant the lack of critical detail in the affidavit, given the 21-month delay, and concluded the affidavit was insufficient as a matter of law to create an issue of material fact. Of note, the Eleventh Circuit questioned the lack of any dates in the affidavit, "leaving one to

16

wonder when the Diocese contacted its former insurance agent, what the agent said, when the Catholic Mutual policy was discovered, what steps the Diocese took to locate other policies, when the agent told the Diocese about the Commercial Union [predecessor to OneBeacon] policies, or how long after that discovery the Diocese notified OneBeacon." *Id.* at 672.

The Court is left with similar unanswered questions here, given the lack of details provided by Amtrak. Why did Amtrak not follow up on the single letter that it sent to SFRTA? Although, in a light favorable to Amtrak, the record reflects that Amtrak did not learn of the Steadfast policy until late 2018, why did Amtrak not take any steps at all to attempt to identify the policy or the insurance carrier prior to that date given that Amtrak was aware of the SFRTA/VTMI maintenance agreement (as referenced in the August 2016 letter). *See* Doc. 51-3. The letter Amtrak sent to SFRTA specifically contemplates that coverage exists, and yet, after no response from SFRTA, Amtrak failed to follow up with SFRTA's lawyer with whom Amtrak requested a meeting and failed to explain in its pleadings its lack of diligence in this regard. Amtrak simply provides no evidence to answer these questions. Amtrak was represented by counsel throughout the *Lee* litigation, had the ability to conduct written and deposition discovery for two years, and participated in a mediation in 2017. Amtrak proffers no evidence that creates a disputed issue of material fact on the question of how its notice to Steadfast in January 2019 could not be considered untimely. No reasonable trier of fact could conclude that Amtrak's notice to Steadfast is timely when Amtrak did not

notify Steadfast until two years and four months after it was served with the *Lee* lawsuit and provides no reasonable explanation for not discovering the Steadfast policy earlier.

## B.   Prejudice

Having determined that Amtrak's notice was untimely, the next question is whether Steadfast was prejudiced by the late notice. The Florida Supreme Court has explained that an insured's breach of the duty of notice (as opposed to the duty of cooperation) results in a rebuttable presumption of prejudice to the insurer. *See Bankers Ins.*, 475 So.2d at 1218. The burden is "on the insured to show lack of prejudice where the insurer has been deprived of the opportunity to investigate the facts." *Id.* Thus, it is not Steadfast's obligation to show it has been prejudiced. The burden is on Amtrak to prove a lack of prejudice to Steadfast. *Gemini II Ltd. v. Mesa Underwriters Specialty Ins. Co.*, 592 F. App'x 803, 806 (11th Cir. 2014) (holding that under Florida law, the burden is on the insured to prove the lack of prejudice).

"Prejudice is properly resolved on summary judgment where an insured fails to present evidence sufficient to rebut the presumption." *PDQ Coolidge Formad, LLC*, 566 F. App'x at 849 (citations omitted). To attempt to rebut the presumption here, Amtrak first argues that Steadfast knew about the Lee accident and lawsuit at the absolute latest by October 31, 2018 when VTMI tendered its defense to Steadfast. Doc. 45 at 11; Doc. 45-13 at 2; Doc. 51-6. VTMI is not an insured under the Steadfast policy, but certainly Steadfast cannot deny knowledge of the litigation by that date. Notwithstanding, that was still over two years after the date of the accident and the

filing of the *Lee* lawsuit. Next, Amtrak contends that the Railroad Signal & Train Control Group Factual Report of Investigation (the "Report") shows knowledge of the incident by Steadfast's insured SFRTA almost immediately following the accident. Doc. 45-15 at 11. However, this does not show that Steadfast knew about the accident, and Amtrak fails to cite any authority to support that SFRTA's knowledge of the accident may be imputed to its insurance carrier. Indeed, imputing such knowledge is illogical as it would essentially eliminate the notice requirement in an insurance policy. The evidence here demonstrates that SFRTA did not even request indemnification and a defense from Steadfast for the claims pending against it in state court until January 9, 2019. *See* Doc. 45-13 at 1. Thus, Amtrak does not proffer any evidence that Steadfast knew of the accident prior to October 31, 2018, which is still more than two years after the date of loss.

Amtrak argues that even if Steadfast did not know about the accident until October 31, 2018, "record evidence shows that an investigation conducted immediately following Ms. Lee's accident would not have disclosed anything materially different from that disclosed by a delayed investigation." Doc. 45 at 12. In support, Amtrak cites to the Report, which Amtrak claims "laid out the material facts of the Lee case." *Id.* Amtrak further submits that Steadfast had time to request and review discovery as the trial had been rescheduled until November 4, 2019. Amtrak faults Steadfast for not using the 8-month time frame in 2019 once it received notice in which to investigate and petition the court for leave to take any supplemental discovery it deemed necessary. *Id.* at 13.

Steadfast responds that Amtrak has failed to proffer any evidence to rebut the presumption of prejudice. The Court agrees. Simply stating that Steadfast was not prejudiced is insufficient for Amtrak to carry its burden and overcome the presumption. *See 1500 Coral Towers*, 112 So. 3d at 545 (conclusory statement by one of plaintiff's engineers that, in his opinion, the late notice did not prejudice the insurer was legally insufficient to overcome the presumption of prejudice). Amtrak's statements that Steadfast had "ample opportunity" to review discovery and to investigate are too conclusory to carry its burden of showing a lack of prejudice. *See Nat'l Tr. Ins. Co. v. Graham Bros. Constr.*, 916 F. Supp. 2d 1244, 1259 (M.D. Fla. 2013) (mere assertion that insurer had "plenty of time to investigate the claims and defend" or intervene in the lawsuit was insufficient to rebut presumption on summary judgment); *Starr Indem. & Liab. Co. v. Rodriguez*, 495 F. Supp. 3d 1279, 1286–87 (S.D. Fla. 2020) (statement that insurer had opportunity to engage in discovery after underlying accident and take statements from Dr. Rodriguez three years after the accident was insufficient to rebut presumption on summary judgment).

Amtrak does not discuss the extent and type of discovery conducted, the status of expert discovery, identity of witnesses deposed or statements taken such that the Court would be able to completely analyze the issue of prejudice. Simply stated, Amtrak wholly fails to show a lack of prejudice as Amtrak fails to proffer evidence to rebut the presumption that Steadfast was prejudiced. As Amtrak has failed to identify details of what investigation and discovery had been done prior to the request for indemnification and defense, the Court is unable to make an informed analysis as to

whether there was anything left for Steadfast to do. Just as problematic, Amtrak does not explain how Steadfast would be able to engage in discovery when, by this point in the litigation, discovery was closed and the parties had already filed motions for summary judgment. Amtrak, in a conclusory manner, claims that Steadfast had the opportunity to engage in written discovery, but there is no indication that the district judge would have re-opened discovery to allow Steadfast to do so on behalf of Amtrak, who had been a party in the case since the date it was filed.

Even assuming, in a light most favorable to Amtrak, that the Report prepared following the accident provided a complete investigation of the accident, the purpose of a provision for notice and proof of loss goes beyond mere causation and is "to enable the insurer to evaluate its rights and liabilities, to afford it an opportunity to make a timely investigation, and to prevent fraud and imposition upon it." *Laster*, 293 So. 2d at 86 (citation omitted). Amtrak has failed to come forward with evidence to show that Steadfast was not prejudiced in its ability to do these things due to the late notice.

In response to Steadfast's motion for summary judgment, Amtrak alternatively argues that questions of fact regarding whether Steadfast was prejudiced preclude summary judgment. However, Amtrak has not directed the Court to any record evidence or any facts to overcome the presumption that Steadfast has been prejudiced. It is Amtrak's burden to do so, and it has failed. No material disputed issues of fact have been raised by Amtrak to overcome the presumption of prejudice, and thus, Steadfast is entitled to summary judgment.

As no genuine issues of material fact exist, Defendant Steadfast Insurance Company is entitled to a judgment in its favor as a matter of law. Defendant Steadfast Insurance Company has no duty under the policy of insurance to defend and/or indemnify Plaintiff National Railroad Passenger Corporation d/b/a Amtrak for the underlying action.

Accordingly, it is hereby

**ORDERED AND ADJUDGED**:

1. Defendant Steadfast Insurance Company's Motion for Summary Judgment (Doc. 43) is **GRANTED**, as no genuine issues of material fact exist.

2. Plaintiff National Railroad Passenger Corporation d/b/a Amtrak's Motion for Final Summary Judgment (Doc. 45) is **DENIED**.

3. Defendant Steadfast Insurance Company has no duty under the policy of insurance to defend and/or indemnify Plaintiff National Railroad Passenger Corporation d/b/a Amtrak for the underlying action.

4. The Clerk is directed to terminate all pending motions as moot. A Declaratory Judgment will be entered by separate Order of the Court.

**DONE AND ORDERED** in Tampa, Florida on March 26, 2022.

*Charlene Edwards Honeywell*
Charlene Edwards Honeywell
United States District Judge

Copies to: Counsel of Record and Unrepresented Parties, if any

22