UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NATIONAL RAILROAD PASSENGER
CORPORATION d/b/a AMTRAK,
a Foreign Corporation,

    Plaintiff,

vs.                                                              **CASE NO.: 8:20-cv-1134-T-36CPT**

STEADFAST INSURANCE COMPANY,

    Defendant.

_____/

## **PLAINTIFF'S MOTION TO AMEND JUDGMENT**

COMES NOW, Plaintiff NATIONAL RAILROAD PASSENGER CORPORATION d/b/a AMTRAK ("Amtrak" or "Plaintiff"), by and through the undersigned counsel, hereby moves this Court pursuant to Fed. R. Civ. P. 59(e) to amend this Court's Judgment that Defendant STEADFAST INSURANCE COMPANY ("Steadfast" or "Defendant") does not owe a duty to defend and/or indemnify Amtrak in the underlying Lee Action. In support thereof, Plaintiff states as follows:

### **PRELIMINARY STATEMENT**

Although this Court recognized that Amtrak is not a named insured on the Steadfast policy, it did not appreciate the consequences of that undisputed fact. The Court incorrectly relied on cases involving named insureds to find

that Amtrak did not act with due diligence. And because Amtrak is not a named insured, the court also applied the wrong burden of proof as to whether Steadfast suffered any substantial prejudice from Amtrak's actions.

This Court should exercise its discretion under Rule 59(e) to correct these errors (which deprived Amtrak of all of its rights under the Steadfast policy), vacate the judgment in favor of Steadfast, and grant summary judgment to Amtrak. If for any reason this Court does not grant summary judgment to Amtrak, it should rule that there is a question of fact as to whether Amtrak acted in a reasonable manner under all the unique facts and circumstances of this case and a question of fact as to whether Steadfast suffered any substantial prejudice from Amtrak's actions.

## STATEMENT OF FACTS

This Court is familiar with the basic facts from its order issued on March 26, 2022 ("the Order"). Amtrak, therefore, will not repeat those facts here. Amtrak is not submitting any new factual materials in support of its Rule 59(e) motion. Rather, the basis for Amtrak's motion is this Court's misapplication of the law to the facts and circumstances of this case.

## LEGAL STANDARD

A motion under Rule 59(e) to alter or amend judgment "is the proper motion for reconsideration of matters encompassed in a decision on the merits of the dispute." *Valdes v. School Bd. of Miami-Dade Cty.*, 806 F. App'x 722, 725

2

(11th Cir. 2020) (internal quotation marks omitted).  "A Rule 59 motion may be granted only based on newly discovered evidence or a manifest error of law or fact, and it may not used to raise new arguments, relitigate old matters, or present evidence that could have been raised prior to the entry of judgment." *Id.*

"The decision to alter or amend a judgment pursuant to Rule 59(e) is 'committed to the sound discretion of the district judge.'" *Mincey v. Head*, 206 F.3d 1106, 1137 (11th Cir. 2000) (quoting *American Home Assurance Co. v. Glenn Estess & Assocs.*, 763 F.2d 1237, 1238-39 (11th Cir. 1985)); *see O'Neal v. Kennomer*, 958 F.2d 1044, 1047 (11th Cir. 1992) (same); *Lapham v. Florida Fish and Wildlife Conservation Comm'n.*, 2022 WL911558 at *1 (Mar. 29, 2022 M.D. Fla.)  (same). Reconsideration is warranted where the movant has "set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *McGuire v. Ryland Grp., Inc.*, 497 F. Supp. 2d 1356, 1358 (M.D. Fla. 2007).

## LEGAL ARGUMENT

### POINT I

**AMTRAK IS NOT A NAMED INSURED AND SHOULD NOT BE TREATED AS A NAMED INSURED**

As explained in Amtrak's motion for summary judgment, Amtrak is not a named insured under the Policy. Rather, the Declarations page, as amended

by the Schedule of Named Insureds, provides that the Named Insureds are SFRTA, CSX Transportation Inc. ("CSX") and Florida Department of Transportation ("FDOT"). Doc. 45-2 at 1, 13. Amtrak, however, qualified as an insured pursuant to the "Who Is An Insured" section of the policy, which provides "Any railroad operating over your track is an insured." *Id.* at 6. Amtrak, therefore, should have been treated differently than a named insured in this Court's analysis.

Although this Court acknowledged that Amtrak is not a named insured in its written opinion, it compared Amtrak's conduct to named insureds who did not act promptly in providing notice with respect to their own policy, which they obviously knew about. *See Yacht Club on the Intracoastal Condo. Ass'n, Inc. v. Lexington Ins. Co.*, 599 F. App'x 875, 877 (11th Cir. 2015); *1500 Coral Towers Condo. Ass'n, Inc. v. Citizens Prop. Ins. Corp.*, 112 So. 3d 541 (Fla. 3d DCA 2013); *Ideal Mut. Ins. Co. v. Waldrep*, 400 So. 2d 782 (Fla. 3 DCA 1981). Amtrak was not a named insured and, therefore, did not purchase, possess or know about the policy.

Similarly, when this Court discussed Amtrak's alleged lack of due diligence, the Court relied mainly upon *OneBeacon America Ins. Co. v. Catholic Diocese of Savannah*, 477 F. App'x 665 (11th Cir. 2012), which applied Georgia law and involved a named insured who did not act with due diligence in finding its ***own*** policy. *OneBeacon* did not address the requirement of due diligence as

4

to an insured who is not the named insured on the policy, and who never received the policy when it was issued. This Court was required to apply Florida law, and there does not appear to be any Florida law on that precise issue. In that situation, this Court must predict how Florida courts would address that issue. *See Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1326 n.5 (11th Cir. 2005) ("A lack of explicit Florida case law on an issue does not absolve us of our duty to decide what the state courts would hold if faced with it."). In general, when Florida courts are deciding the timeliness of an insured's actions, the test is whether the insured acted "with ***reasonable*** dispatch and within a ***reasonable*** time in view of all the facts and circumstances of the particular case." Order at 12 (emphasis added) (quoting *Laster v. U.S. Fid. & Guar. Co.*, 293 So. 2d 83, 86 (Fla. 3d DCA 1974)) .[1]

Applying that test here, the facts and circumstances show that Amtrak acted in a reasonable manner. As the Court acknowledged, there is no proof that Amtrak actually knew of the Steadfast policy until its existence was discovered in late 2018 at a mediation. Order at 12.

---

[1] "[U]nder Florida law, 'prompt,' 'as soon as practicable,' 'immediate,' or comparable phrases have been interpreted to mean the notice should be given 'with reasonable dispatch and within a reasonable time in view of all of the facts and circumstances of the particular case.'" *Yacht Club*, 599 F. App'x at 879 (quoting *State Farm Mut. Auto. Ins. Co. v. Ranson*, 121 So. 2d 175, 181 (Fla. 2d DCA 1960), *overruled in part on other grounds*, *Am. Fire & Cas. Co. v. Collura*, 163 So. 2d 784, 793-94 (Fla. 2d DCA 1964)).

5

This Court, however, concluded that Amtrak should have known of the policy's existence before late 2018, though it did not say when. The facts, however, do not justify this conclusion, and they certainly do not justify that conclusion as a matter of law. As explained above, Amtrak was not a named insured, and therefore did not purchase or possess the policy. Amtrak is not even an additional insured in the traditional sense. Most additional insureds request in a contract that they be provided additional insured coverage under the policy in question, *e.g.*, a landlord in a lease with its tenant or a property owner in a contract with a general contractor. As such, a traditional additional insured knows of the existence of the policy covering them because they demanded in a contract to be covered under that policy.

That is not the case here with Amtrak. The policy in question is a railroad protective liability ("RPL") policy. The requirement to purchase that RPL policy is in SFRTA's Maintenance of Way ("MOW") Agreement with VTMI. Doc 43-2 at 23 (General Conditions § 2.9.13). Amtrak was not a party to that contract. VTMI was not Amtrak's contractor. Thus, this is not a situation where Amtrak's contractor was required by Amtrak's contract to purchase the Steadfast policy in question, and thus, Amtrak would have known of the policy's existence from day 1.

This Court also incorrectly said that Amtrak was aware of the MOW Agreement between the SFRTA and VTMI and, therefore, Amtrak should have

6

known of the existence of the RPL policy providing coverage to Amtrak.  *See* Order at 17.  Even if Amtrak was aware of the MOW Agreement, knowledge of the MOW Agreement is not the same thing as Amtrak knowing that it was an insured on the RPL policy.  The MOW Agreement required VTMI to purchase a RPL policy with the named insureds being SFRTA, FDOT and CSX.  Doc. 43-2 at 24.  (General Conditions § 2.9.13).  Amtrak is **not** mentioned in that RPL section of the MOW Agreement, nor is there any mention of a railroad operating on the tracks being an insured on that policy.  *Id.*

Nor is this a situation where Amtrak received a certificate of insurance telling it of the existence of the Steadfast policy.  There is no evidence in the record that such a certificate of insurance was ever provided to Amtrak.  The MOW Agreement required VTMI to provide SFRTA's Contracting Officer, not Amtrak, with a certificate that the required insurance was obtained.  *Id.* at 21 (General Conditions § 2.9.3).

Moreover, on August 9, 2016, Amtrak sent a letter to SFRTA asking for any insurance policies covering SFRTA for the accident.  SFRTA did not respond, but shortly thereafter, on September 16, 2016, the underlying action was commenced.  Amtrak reasonably assumed that the existence of any applicable policies would be disclosed in discovery in that action.  Although other policies came to light in discovery, *see* Order at 11 n.3, the Steadfast policy did not.  SFRTA did not disclose the existence of the Steadfast policy

even though it was briefly a defendant in the underlying federal action and later a defendant in state court when the claim against it was remanded. SFRTA itself apparently did not recognize it had the RPL policy and/or that it provided coverage for the accident because it did not tender the claim against it to Steadfast until January 2019. Order at 14 (citing Doc. 45-13 at 1). Amtrak should not be expected to know more about the Steadfast policy than the actual policyholder (SFRTA) did.

If this Court does not grant Amtrak summary judgment on this issue, it should at least deny Steadfast's summary judgment on the ground that the reasonableness of Amtrak's conduct under the unique facts and circumstances of this case presents a question of fact. "[T]he question as to what is a reasonable time, depending as it does upon the surrounding circumstances, is ordinarily for decision by the trier of facts . . . ." *Yacht Club*, 599 F. App'x at 879 (adding that it also can be decided as a matter of law, but only "when facts are undisputed and different inferences cannot reasonably be drawn therefrom"). This Court, however, decided that issue as a matter of law, as it determined that "the undisputed factual record establishe[d] notice [was] so late that no reasonable juror could find it timely." Order at 12 (quoting *Clena Invs., Inc. v. XL Specialty Ins. Co.*, No. 10-CV-62028, 2012 WL 1004851, at *4 (S.D. Fla. Mar. 26, 2012)). In making this conclusion, however, this Court relied on three distinguishable cases in which named insureds, who were

8

aware of and had possession of *their own* policies, delayed notice by two or more years. *See id.; Midland Nat. Ins. Co. v. Watson*, 188 So. 2d 403 (Fla. Dist. Ct. App. 1966); *Kroener v. Fla. Ins. Guar. Ass'n*, 63 So. 3d 914 (Fla. Dist. Ct. App. 2011). As discussed above, Amtrak was in a much different position than a named insured. Additionally, Amtrak promptly provided notice to Steadfast approximately one month after learning of the Steadfast policy's existence. Based on the above, it cannot be said that "no reasonable juror" could find Amtrak's notice timely.

## POINT II

### STEADFAST WAS NOT SUBSTANTIALLY PREJUDICED BY ANY BREACH OF THE POLICY BY AMTRAK

If for any reason the Court concludes that Amtrak breached a policy provision, Amtrak is nevertheless entitled to summary judgment because Steadfast did not suffer any substantial prejudice from that breach. Here again, Amtrak not being a named insured is a critical, undisputed fact.

To resolve the prejudice issue, it is necessary to determine which policy provision Amtrak breached. The relevant policy provision is § IV(B)(2), entitled "Duties In The Event of Occurrence, Claim Or Suit," and consist of three subparts. Doc. 45-2 at 8-9. The first subpart required "You" to notify Steadfast "as soon as practicable" of an occurrence which may result in a claim. *Id.* at 8. The second subpart requires "You" to notify Steadfast "as soon as

9

4874-8038-5309v.1

practicable" if a claim is made or suit is brought. *Id.* at 9. "You" is defined in the introduction of the policy as the "Named Insured shown in the Declarations." *Id.* at 4. Hence, these subparts do not apply to Amtrak, which is not a named insured. The Declarations page, as amended by the Schedule of Named Insured, provides that the named insureds are SFRTA, CSX and FDOT. *Id.* at 1, 13.

In contrast, the third subpart did apply to Amtrak. That subpart requires "you and any other involved insured" (which would include Amtrak) to cooperate with Steadfast in the defense of the claim or suit. *Id.* at 9. "A cooperation clause requires the insured to cooperate with his insurer when a lawsuit is filed against him." *Martin v. Commercial Union Ins. Co.*, F.2d 235, 240 (11th Cir. 1991), 935. Specifically, the third subpart requires any insured to: (1) immediately send Steadfast copies of any legal papers received in connection with the claim or suit; (2) authorize Steadfast to obtain records and other information; (3) cooperate with Steadfast in the investigation, settlement or defense of the claim or suit; and (4) assist Steadfast, upon its request, with pursuing any rights against any person or entity that may be liable to the insured for the claim or suit. *Id.*

Looking at all three subparts together, SFRTA (not Amtrak) was required to notify Steadfast of the occurrence "as soon as practicable" and to notify Steadfast of the claim and suit "as soon as practicable." Amtrak's only

10

obligation under the policy was to provide copies of any legal papers and to otherwise cooperate with Steadfast.  The prejudice to Steadfast flowing from any violation by Amtrak of the requirement to "provide papers" is significantly less than that flowing from SFRTA's failure to provide notice to Steadfast of the occurrence, claim and suit.

This Court recognized that the first two subparts applied to the named insured and that only the third subpart applied to Amtrak as "*any other involved insured*." Order at 10 (emphasis in original).  The rest of the Court's Order, however, says that Amtrak should have given Steadfast notices of the occurrence, claim and suit "as soon as practicable," when the policy imposed that duty on the named insured (SFRTA), not Amtrak. Thus, the Court's Order is internally inconsistent.

Moreover, this Court did not appreciate that under Florida law, different presumptions arise depending upon which condition of a policy an insured has breached.  In fairness to the Court, neither party advised the Court of this difference under Florida law.  But Rule 59(e) provides the Court with discretion to remedy that problem now.

Under Florida law, if an insured breaches a notice provision, prejudice to the insurer is presumed, and the insured has the burden of proving that the insurer was not prejudiced by the late notice. *LoBello v. State Farm Fla. Ins. Co.*, 152 So. 3d 595, 599 (Fla. Dist. Ct. App. 2014). On the other hand, if an

11

insured breaches a cooperation clause, the insurer has the burden of showing a material failure to cooperate that substantially prejudiced the insurer. *Bankers Ins. Co. v. Macias*, 475 So. 2d 1216, 1217-18 (Fla. 1985); *Goldman v. State Farm Fire Gen. Ins. Co.*, 660 So. 2d 300, 304 (Fla. 4th DCA 1995); *Continental Cas. Co. v. City of Jacksonville*, 550 F. Supp. 2d 1312, 1339 (M.D. Fla. 2007), *aff'd*, 283 F. App'x 686 (11th Cir. 2008).

As the Supreme Court of Florida recognized in *Bankers Ins.*, the contractual duties in these clauses "are imposed on the insured for different reasons and must be considered separately." 475 So. 2d at 1217. "The notice requirement enables the insurer to conduct a timely and adequate investigation of all circumstances surrounding an accident." *Id.* "The cooperation requirement, on the other hand, arises to prevent fraud and collusion in proceedings to determine liability once notice has been given." *Id.* Most liability insurance policies include cooperation clauses "providing that the insured shall cooperate with the insurer, shall attend hearings and trials upon the insurer's request, and shall assist in effecting settlements, in securing and giving evidence, in obtaining the attendance of witnesses, and in the conduct of suits." *Goldman*, 660 So. 2d at 304 n.6.

Applying the correct burden of proof, Steadfast had the burden to show that it suffered substantial prejudice from any breach by Amtrak of the cooperation clause. Steadfast did not carry that burden. It made no showing

12

that Amtrak's investigation, defense and settlement of the underlying crossing accident with very serious injuries was anything less than excellent. It did not identify any gaps in Amtrak's defense of the underlying case. Rather, as demonstrated by this Court's docket in the underlying action, Amtrak vigorously defended that action.

In sum, Steadfast made no showing that it would have obtained a better result than Amtrak did in defending and settling the case if it had received the suit papers from Amtrak earlier than it did. The amount sought by Amtrak in its motion for its defense costs and settlement contribution was $848,013 (Doc. 45 at 14), which is a remarkably reasonable sum for such a serious claim. In its summary judgment motion, Amtrak requested an evidentiary hearing to establish its damages in the event it prevailed on the coverage issues. That hearing will provide Steadfast with the opportunity to challenge the reasonableness of any amounts paid by Amtrak.

If this Court does not grant Amtrak's summary judgment motion on the issue of prejudice, it should also deny Steadfast's motion on the ground that the prejudice issue presents a question of fact. This is true even if this Court adheres to its position that Amtrak had the burden to rebut the presumption of prejudice. Typically, that issue presents a question of fact. *De La Rosa v. Fla. Peninsula Ins. Co.*, 246 So. 3d 438, 441 (Fla. Dist. Ct. App. 2018) ("Whether the presumption of prejudice to the insurer has been overcome is ordinarily . . . a

separate issue of fact.") (internal quotations omitted). "Before a court grants summary judgment, the record on such a motion should ***conclusively foreclose*** the insured's ability to overcome the presumption [of prejudice]." *Id.* (emphasis added) (internal quotations omitted). Amtrak's ability to overcome the presumption of prejudice was not "conclusively foreclosed" on this record and that issue should not have been decided on summary judgment.

## CONCLUSION

This Court should grant Amtrak's motion to amend the judgment, vacate its judgment in favor of Steadfast, grant Amtrak's motion for summary judgment and schedule an evidentiary hearing on the amount owed by Steadfast to Amtrak for its defense and settlement of the underlying action. If for any reason the Court does not grant Amtrak's motion for summary judgment, it should still deny Steadfast's motion for summary judgment on the grounds that questions of fact exist as to whether Amtrak acted in a reasonable manner and whether Steadfast was substantially prejudiced by Amtrak's alleged breach of the cooperation clause.

## Local Rule 3.01(g) Certification

Plaintiff believes that this motion is exempt from the requirement to confer with opposing counsel pursuant to Local Rule 3.01(g)(1); however, pursuant to Local Rule 3.01(g), the undersigned certifies that Counsel for

4874-8038-5309v.1

Plaintiff has been unable to confer with Counsel for Defendant prior to the filing of this Motion.

WHEREFORE, Plaintiff NATIONAL RAILROAD PASSENGER CORPORATION d/b/a AMTRAK respectfully requests that this Court enter an order granting this Motion to Amend the Judgment in favor of Defendant STEADFAST INSURANCE COMPANY and granting such other relief as the Court deems just and proper.

/s/ Daniel Fleming
Daniel Fleming
Florida Bar No.: 871222
Primary Email: dfleming@jpfirm.com
Secondary Email: smartin@jpfirm.com
J.D. Zarate
Florida Bar No: 119490
Primary Email: jdzarate@jpfirm.com
Kevin Tragesser
Florida Bar No: 1011458
Primary Email: kevint@jpfirm.com
Johnson Pope Bokor Ruppel & Burns, LLP
401 E. Jackson Street, Suite 3100
Tampa, FL 33602
(813) 225-2500
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on Mon, Apr 25, 2022, I electronically served the foregoing to the following: Bradley Fischer of Lewis Brisbois Bisgaard & Smith, LLP, 110 SE 6th Street, suite 2600, Fort Lauderdale, FL 33301, Bradley.fuscher@lewisbrisbois.com; daniel.allison@lewisbrisbois.com elsie.stfleur@lewisbrisbois.com; ftlemaildesig@lewisbrisbois.com.

15

4874-8038-5309v.1

/s/ Daniel Fleming
Daniel Fleming, Esq.

4874-8038-5309v.1